James Lawson ST. CLAIR, Appellant,

v.

The STATE of Texas, Appellee.

No. 10–99–074–CR.

Court of Appeals of Texas, Waco.

July 12, 2000.

Brian W. Wice, Houston, for appellant.

Dale Hanna, Dist. Atty., David W. Vernon, Asst. Dist. Atty., Cleburne, for appellee.

BEFORE: Chief Justice DAVIS, Justice VANCE and Justice GRAY.

**OPINION**

REX D. DAVIS, Chief Justice.

The trial court convicted James Lawson St. Clair in a bench trial of aggravated assault on a public servant, failure to stop and render aid, and intoxication assault. *See* TEX.PEN.CODE ANN. § 22.02(a)(2), (b)(2) (Vernon 1994); TEX.TRANSP.CODE ANN. § 550.021(a)(3), (c) (Vernon 1999); Act of May 29, 1993, 73d Leg., R.S., ch. 900, § 1.01, sec. 49.07(a), 1993 Tex.Gen.Laws 3586, 3697 (amended 1999) (current version at TEX.PEN.CODE ANN. § 49.07(a)(1) (Vernon Supp.2000)). The court found that St. Clair used a deadly weapon, namely an automobile, during the commission of the aggravated assault and intoxication assault offenses. The court sentenced St. Clair to sixteen years' imprisonment for the aggravated assault and five years' imprisonment for each of the remaining offenses and decreed that his sentences run concurrently.

St. Clair presents nine points of error in which he claims:

- the court erred by overruling his motion to quash the indictment because it failed to provide adequate notice (two points);
- the evidence is legally insufficient to support the verdict on any of the three offenses (three points); and
- the court erred by admitting in evidence his blood test results because they were obtained in violation of his federal and state constitutional rights

and in violation of statutory requirements (four points).

## BACKGROUND

St. Clair was driving his girlfriend's Pontiac Sunbird convertible erratically on County Road 174 in Burleson during rush hour. Susan Anderson was attempting to exit the parking lot of a business alongside C.R. 174 in her Toyota Camry. St. Clair drifted off the road and collided with the driver's side of Anderson's Camry. The force of the collision spun the Camry around and killed the Sunbird's engine. St. Clair sustained a head injury and momentarily slumped over the wheel of the Sunbird.

Anderson's four-year-old son Austin was sleeping in the backseat of the Camry at the time of the collision. Anderson was about eight weeks' pregnant. Anderson noted only "bumps and bruises" on herself immediately following the collision. Her attention was focused primarily on Austin. An ambulance promptly responded to the scene and transported Anderson and Austin to Cook Children's Medical Center in Fort Worth where Austin was treated and released.

Moments after the collision, St. Clair restarted the Sunbird and left the scene. He parked the car behind a grocery store about a block away. Two men who had witnessed the accident followed St. Clair in their pickup. Burleson Police Officer Robert Sherman deemed suspicious the manner in which the two vehicles were driving, activated his overhead lights and siren, and drove to the rear of the grocery store. Sherman pulled alongside the pickup and instructed the men not to leave. He then parked his patrol car behind the Sunbird and approached the driver's side of the car. Upon observing St. Clair's condition, Sherman radioed his dispatcher for medical assistance. He learned from the dispatcher that a collision had occurred nearby just moments earlier. He told the dispatcher that he had stopped someone who was probably involved in the collision.

When St. Clair overheard Sherman's conversation with the dispatcher, he started the Sunbird. Sherman tried unsuccessfully to reach in and turn off the car. He then pulled his service revolver and ordered St. Clair to turn off the car. St. Clair ignored him and drove away, circling through a grassy area and a drainage ditch before returning to the pavement. At this point, St. Clair turned the Sunbird in Sherman's direction and accelerated. Sherman attempted to shield himself with a wooden utility pole located just off the pavement as St. Clair drove directly toward him while continuing to accelerate. St. Clair stopped the Sunbird a few feet away from the utility pole and then stood up inside the convertible.

Sherman returned his revolver to its holster and pulled out a container of pepper spray. He directed St. Clair to get out of the car. When St. Clair failed to do so, Sherman sprayed him with the pepper spray. Because the wind was blowing from St. Clair's direction, the spray incapacitated both of them. Another officer subdued St. Clair and handcuffed him as Sherman cleared his eyes. St. Clair fought with emergency medical technicians ("EMT's") and tried to bite them as they attempted to place him on a gurney and put him in the ambulance. At the emergency room, St. Clair continued to fight with medical personnel. A blood specimen obtained at the hospital revealed an alcohol concentration of 0.188, and a urine specimen indicated the presence of cannabinoids.

Anderson and her son arrived home from the hospital at 10:00 or 10:30 that night. At home, she noticed that her undergarments "were pretty much soaked in blood." She called the emergency number for her obstetrician and was instructed to come in the next morning. After an examination the next morning, it was determined that she had suffered a miscarriage.

## SUFFICIENCY OF THE INDICTMENT

■ St. Clair contends in his first point that the court erred by overruling his motion to quash the aggravated assault count of the indictment because it failed to give him adequate notice of the manner or means by which he threatened Sherman.

The aggravated assault count reads in pertinent part that St. Clair did:

intentionally or knowingly threaten imminent bodily injury to R. Sherman, a public servant, to-wit: a police officer for the City of Burleson, Texas, while R. Sherman was lawfully discharging an official duty and the defendant knew that R. Sherman was a public servant, and the defendant did use or exhibit a deadly weapon during the commission of the assault, to-wit: a motor vehicle, that in the manner of its use or intended use was capable of causing death or serious bodily injury.

The State responds that the indictment is proper because it tracks the language of the statute and because "the only sensible meaning" of the indictment, when read as a whole, "is that the motor vehicle was intentionally or knowingly driven in an assaultive manner, threatening imminent bodily injury or death to Officer Sherman."

The Texas Constitution and Code of Criminal Procedure require that an indictment provide an accused with adequate notice. *See State v. Mays*, 967 S.W.2d 404, 406 (Tex.Crim.App.1998); TEX. CONST. art. I., § 10; TEX.CODE CRIM.PROC.ANN. art. 1.05 (Vernon 1977). An indictment must allege the commission of an offense with enough certainty that the defendant can "plead the judgment that may be given upon it in bar of any prosecution for the same offense." TEX.CODE CRIM.PROC.ANN. art. 21.04 (Vernon 1989).

■ Article 21.11 of the Code of Criminal Procedure provides in pertinent part:

An indictment shall be deemed sufficient which charges the commission of the offense in ordinary and concise language in such a manner as to enable a person of common understanding to know what is meant, and with that degree of certainty that will give the defendant notice of the particular offense with which he is charged. . . .

*Id.* art. 21.11 (Vernon 1989). When we review an indictment under article 21.11, the indictment is "read as a whole and viewed in light of common understanding." *Hare v. State*, 713 S.W.2d 396, 398 (Tex. App.—El Paso 1986, pet. ref'd).

■ An indictment need not set forth facts which are "merely evidentiary in nature." *Mays*, 967 S.W.2d at 406. Generally, an indictment which tracks the statutory language will provide adequate notice. *Id.* In the face of a motion to quash however, an indictment must provide more specific allegations "if the prohibited conduct is statutorily defined to include more than one manner or means of commission." *Saathoff v. State*, 891 S.W.2d 264, 266 (Tex.Crim.App.1994) (per curiam). Additionally, "[a] statute which uses an undefined term of indeterminate or variable meaning requires more specific pleading in order to notify the defendant of the nature of the charges against him." *Mays*, 967 S.W.2d at 407.

The Court of Criminal Appeals applied the latter principle in *Doyle v. State,* a case in which the appellant had been charged with retaliation by threatening a public servant. 661 S.W.2d 726, 727 (Tex.Crim. App.1983) (per curiam). The indictment in that case alleged that Doyle did:

intentionally and knowingly threaten to harm another person, namely: Dan Gibbs, by an unlawful act in retaliation for and on account of the service of the said Dan Gibbs as a public servant, in that the said defendant threatened to kill the said Dan Gibbs on account of the services of the said Dan Gibbs as a judge in a prior lawsuit in which the defendant was a party.

*Id.* at 729. The Court observed that, although the indictment alleged the nature

of the threat, it failed to specify the manner and means by which Doyle committed the offense. *Id.* at 730. The Court noted that the alleged threat "could have been conveyed in a number of ways, including: face to face in person, over the phone directly, through a third party, or through the mail." *Id.* The Court concluded that the trial court had erred in overruling the motion to quash because the indictment did not allege "facts sufficient to bar a subsequent prosecution for the same offense" or "to give [Doyle] precise notice of the offense with which he was charged." *Id.* at 731.

The State places primary reliance on *Hare,* which involved an indictment substantially similar to St. Clair's.[1] *See Hare,* 713 S.W.2d at 398. The El Paso Court found the indictment in that case sufficient because:

> the instrumentality alleged in this indictment, an automobile, is not susceptible to widely varied manners of use in an intentionally assaultive manner such as to preclude preparation of a defense. The only common sense meaning of the indictment is that the vehicle was intentionally or knowingly driven in an assaultive manner threatening imminent serious bodily injury or death to the complainant.

*Id.* (citing *Preston v. State,* 675 S.W.2d 598, 601 (Tex.App.—Dallas 1984, pet. ref'd); *Pass v. State,* 634 S.W.2d 857, 862 (Tex.App.—San Antonio 1982, pet. ref'd)).

We find the analysis in *Hare* persuasive. Unlike *Doyle,* the indictments in *Hare* and in the instant case allege the particular weapon with which the defendant threatened the victim. *Compare Doyle,* 661 S.W.2d at 729; *with Hare,* 713 S.W.2d at 398; *see also Pass,* 634 S.W.2d at 858. Although it is true that St. Clair's indictment does not allege the manner in which

he used a motor vehicle to threaten Officer Sherman, "[t]he only common sense meaning of the indictment is that the vehicle was intentionally or knowingly driven in an assaultive manner threatening imminent serious bodily injury or death to the complainant." *Hare,* 713 S.W.2d at 398. Accordingly, we overrule St. Clair's first point.

## THE DEADLY–WEAPON ALLEGATION

St. Clair argues in his second point that the court erred by overruling his motion to quash the deadly-weapon allegation associated with the aggravated assault count because it failed to give him adequate notice of the manner in which he used or exhibited a motor vehicle as a deadly weapon.

The State cites *Fann v. State* and *Pena Cortez v. State* for the proposition that St. Clair's point is moot because, in cases in which the trial court assesses the punishment, the court may make an affirmative deadly weapon finding even if the State has not alleged the use or exhibition of a deadly weapon. *Fann,* 702 S.W.2d 602, 604–605 (Tex.Crim.App.1986) (op. on reh'g); *Pena Cortez,* 732 S.W.2d 713, 714 (Tex.App.—Corpus Christi 1987, no pet.). In the alternative, the State argues that it need not allege a manner and means in connection with a deadly-weapon allegation, or if it must, the reasoning of *Hare* dictates that the allegation in this case is sufficient.

The deadly weapon allegation in St. Clair's indictment reads as follows:

> and it is further presented to the court that a deadly weapon, to-wit: a motor vehicle, that in the manner of its use or intended use was capable of causing death or serious bodily injury, was used during the commission of this offense or

---

1. The indictment in *Hare* alleged that he did: [i]ntentionally and knowingly threaten Larry Jackson with imminent bodily injury and did then and there use a deadly weapon, to-wit; a 1984 Chrysler automobile that in the

> manner of its use and intended use was capable of causing death and serious bodily injury.

*Hare v. State,* 713 S.W.2d 396, 398 (Tex. App.—El Paso 1986, pet. ref'd).

in immediate flight from this offense and the defendant used or exhibited that deadly weapon.

The indictments in *Fann* and *Pena Cortez* did not contain deadly-weapon allegations. *Fann,* 702 S.W.2d at 603; *Pena Cortez,* 732 S.W.2d at 714. Nevertheless, the Court of Criminal Appeals has more recently concluded that due course of law requires the State to give notice to an accused of its intention to seek a deadly-weapon finding. *See Ex parte Patterson,* 740 S.W.2d 766, 776 (Tex.Crim.App.1987); *Jordan v. State,* 1 S.W.3d 153, 158 (Tex. App.—Waco 1999, pet. ref'd). Accordingly, we think the rule pronounced in *Fann* must be limited in that a trial court may make an affirmative deadly-weapon finding when it is the trier of fact only if the State has given proper notice of its intent to seek such a finding. *See Ex parte Franklin,* 757 S.W.2d 778, 783–84 (Tex.Crim. App.1988); *see also Butler v. State,* 936 S.W.2d 453, 461–62 (Tex.App.—Houston [14th Dist.] 1996, pet. ref'd). Thus, the issue presented is not moot.

St. Clair cites *Mitchell v. State* for the proposition that an allegation that a motor vehicle was used or exhibited as a deadly weapon must set forth the manner and means by which the vehicle was so used or exhibited. 821 S.W.2d 420 (Tex.App.— Austin 1991, pet. ref'd). The deadly-weapon allegation in *Mitchell* was substantially identical to the one in the instant case. *See id.* at 424. Mitchell argued that the allegation was inadequate because it did not "allege the manner and means by which the automobile became a deadly weapon." *Id.* The Austin Court "[a]ssum[ed] without deciding that an allegation of the manner and means of the automobile's use was necessary to give adequate notice" and concluded that the deadly-weapon allegation in that case was sufficient *Id.*

As previously discussed, the Court of Criminal Appeals has required in certain circumstances that an indictment provide more specific notice of the manner and means by which the accused committed the offense alleged. *See, e.g., Mays,* 967 S.W.2d at 407; *Saathoff,* 891 S.W.2d at 266–67. However, we believe this principle applies only to the "notice" to which an accused is entitled concerning the primary offense.

Settled case law now establishes that a deadly-weapon allegation need not be set forth in the indictment. *See Patterson,* 740 S.W.2d at 776; *Jordan,* 1 S.W.3d at 158. In the same manner, an allegation of prior convictions for enhancement purposes does not have to be placed in the indictment. *Brooks v. State,* 957 S.W.2d 30, 33–34 (Tex.Crim.App.1997). Because such allegations need not be contained in an indictment, we conclude that a deadly-weapon allegation need not set forth the manner and means of use or exhibition of the weapon as is required for the pleading of the primary offense in an indictment.[2] *Cf. Freda v. State,* 704 S.W.2d 41, 42 (Tex. Crim.App.1986); *Williams v. State,* 980 S.W.2d 222, 226 (Tex.App.—Houston [14th Dist.] 1998, pet. ref'd) (both holding "it is not necessary to allege prior convictions for the purpose of enhancement with the same particularity which must be used in charging on the primary offense").

For these reasons, we overrule St. Clair's second point.

## SUFFICIENCY OF THE EVIDENCE

St. Clair claims in his third, fourth, and fifth points respectively that the evidence is legally insufficient to support his conviction for any of the offenses alleged. When we consider a claim of

2. This holding does not excuse the State from alleging, in a case involving a weapon which is not deadly by design, that the weapon at issue "in the manner of its use or intended use is capable of causing death or serious bodily injury." *See Thomas v. State,* 821 S.W.2d 616, 619–20 (Tex.Crim.App.1991); Tex.Pen.Code Ann. § 1.07(a)(17) (Vernon 1994).

legal insufficiency, we view the evidence in a light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements beyond a reasonable doubt. *Lacour v. State*, 8 S.W.3d 670, 671 (Tex.Crim.App. 2000) (citing *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979)). We resolve any inconsistencies in the evidence in favor of the verdict. *Matson v. State*, 819 S.W.2d 839, 843 (Tex.Crim.App.1991).

## AGGRAVATED ASSAULT ON A PUBLIC SERVANT

■ St. Clair avers in his third point that the evidence is legally insufficient to support his conviction for aggravated assault because Officer Sherman never testified that he felt threatened and because the State failed to prove that the Sunbird, in the manner of its use, was capable of causing death or serious bodily injury.

To prove the crime alleged, the State had to show that St. Clair "threaten[ed] [Sherman] with imminent bodily injury" and "use[d] or exhibit[ed] a deadly weapon during the commission of the assault." *See* TEX.PEN.CODE ANN. § 22.01(a)(2) (Vernon Supp.2000). § 22.02(a)(2) (Vernon 1994). Because the Sunbird is not a deadly weapon by design, the State had to prove that it was, in the manner in which St. Clair drove it, "capable of causing death or serious bodily injury." *See* TEX. PEN.CODE ANN. § 1.07(a)(17) (Vernon 1994); *see also Thomas v. State*, 821 S.W.2d 616, 619–20 (Tex.Crim.App.1991); *Rachuig v. State*, 972 S.W.2d 170, 178 (Tex.App.— Waco 1998, pet. ref'd).

■ A person can communicate a threat by conduct as well as by words. *McGowan v. State*, 664 S.W.2d 355, 357 (Tex.Crim.App.1984); *DeLeon v. State*, 865 S.W.2d 139, 142 (Tex.App.—Corpus Christi 1993, no pet.). According to the evidence, St. Clair turned the Sunbird in Sherman's direction and began accelerating. Sherman testified that he "could hear the engine accelerating and the tires squealing." As Sherman tried to take cov-

er behind the utility pole, St. Clair turned the car in that direction and continued accelerating. St. Clair "came to a skidding stop" about six feet away. Sherman testified that he "was in fear of being struck by the car" as it accelerated toward him.

From this evidence we conclude that a rational trier of fact could have found that St. Clair "threatened [Sherman] with imminent bodily injury." *See Green v. State*, 831 S.W.2d 89, 93 (Tex.App.—Corpus Christi 1992, no pet.); *see also DeLeon*, 865 S.W.2d at 142. We likewise conclude that a rational trier of fact could have found that the Sunbird was, in the manner in which St. Clair operated it, "capable of causing death or serious bodily injury." *See Davis v. State*, 964 S.W.2d 352, 354 (Tex.App.—Fort Worth 1998, no pet.); *Green*, 831 S.W.2d at 93. Accordingly, we overrule St. Clair's third point.

## FAILURE TO STOP AND RENDER AID

■ St. Clair contends in his fourth point that the evidence is legally insufficient to support his conviction for failure to stop and render aid because the State failed to prove beyond a reasonable doubt that it was "reasonably apparent" to him that Anderson needed treatment "or, in the alternative, that [he] had a duty to render assistance to her given the immediate presence of other individuals who were similarly situated who were in a position to, and ultimately did, render assistance."

The indictment alleges in pertinent part that St. Clair did:

intentionally and knowingly drive a vehicle which became involved in an accident resulting in injury to a person, namely, Susan Anderson, and the said defendant did thereafter, knowing said accident had occurred, intentionally and knowingly leave the scene of said accident, without giving his name and address to any person, and without rendering reasonable assistance to Susan Anderson when it was apparent that Susan Anderson was in need of medical treatment.

St. Clair does not dispute that he failed to remain at the scene of the collision. Instead, he argues that he had no duty to remain there because: (1) Anderson's injuries were not "reasonably apparent" and (2) others at the scene were capable of providing and did provide assistance.

Section 550.021(c) of the Transportation Code defines the felony offense of failure to stop and render aid. *See* Tex.Transp. Code Ann. § 550.021(c); *see also Steen v. State*, 640 S.W.2d 912, 915 (Tex.Crim.App. 1982); *Elias*, 693 S.W.2d 584, 587 (Tex. App.—San Antonio 1985, no pet.). Under this provision, an operator of a vehicle involved in an accident resulting in personal injury or death commits the offense if he "does not stop *or* does not comply with the requirements of this section." Tex.Transp. Code Ann. § 550.021(c) (emphasis added).

The "requirements" of section 550.021 are found in subsection (a) of the statute, which provides:

(a) The operator of a vehicle involved in an accident resulting in injury to or death of a person shall:

(1) immediately stop the vehicle at the scene of the accident or as close to the scene as possible;

(2) immediately return to the scene of the accident if the vehicle is not stopped at the scene of the accident; and

(3) remain at the scene of the accident until the operator complies with the requirements of Section 550.023.

Tex.Transp.Code Ann. § 550.021(a) (Vernon 1999).

To comply with section 550.023, the operator of a vehicle involved in an accident which results in personal injury or death or damage to a vehicle must:

- give his name and address, the registration number of his vehicle, and the name of his liability insurer to any others involved in the collision;

- show his driver's license to anyone involved in the collision, if requested; and

- "provide any person injured in the accident reasonable assistance, including transporting or making arrangements for transporting the person to a physician or hospital for medical treatment if it is apparent that treatment is necessary, or if the injured person requests the transportation."

Tex.Transp.Code Ann. § 550.023 (Vernon 1999).

■ Because section 550.021 does not prescribe a culpable mental state for commission of the offense or "plainly dispense" with the need to prove culpability, the State must prove that St. Clair acted with one of the culpable mental states found in section 6.02 of the Penal Code. *See* Tex. Pen.Code Ann. § 6.02(b) (Vernon 1994). The Court of Criminal Appeals has determined that the State satisfies this burden by showing that "the accused had knowledge of the circumstances surrounding his conduct (V.T.C.A., Penal Code Sec. 6.03(b)), *i.e.*, had knowledge that an accident had occurred." *Goss v. State*, 582 S.W.2d 782, 785 (Tex.Crim.App.1979) (citing Tex.Pen.Code Ann. § 6.03(b) (Vernon 1994)); *accord Jaynes v. State*, 673 S.W.2d 198, 201 (Tex.Crim.App.1984); *Baker v. State*, 974 S.W.2d 750, 750 (Tex.App.—San Antonio 1998, pet. ref'd).

■ Thus, Texas courts have listed the elements for the offense of failure to stop and render aid as follows: (1) an operator of a vehicle; (2) intentionally or knowingly; (3) involved in an accident; (4) resulting in personal injury or death; (5) fails to stop and render reasonable assistance.[3] *Steen*,

---

**3.** The courts have enunciated these elements in connection with the predecessor statute, article 6701d, sections 38 and 40. *See* Act May 28, 1977, 65th Leg., R.S., ch. 810, § 4, 1977 Tex.Gen.Laws 2029, 2029–30 (amended 1995) (current version at Tex.Transp.Code Ann.

§ 550.023 (Vernon 1999)); Uniform Act Regulating Traffic on Highways, 50th Leg., R.S., ch. 421, § 38, 1947 Tex.Gen.Laws 967, 974 (amended 1995) (current version at Tex. Transp.Code Ann. § 550.021 (Vernon 1999)). Nevertheless, when the Legislature codified

640 S.W.2d at 915; *Allen v. State*, 971 S.W.2d 715, 717 (Tex.App.—Houston [14th Dist.] 1998, no pet.). Although the courts have defined the fifth element as having conjunctive requirements, section 550.021 (and its predecessor, article 6701d, section 38(b)) plainly provides that the offense is committed if a vehicle operator involved in an accident resulting in injury or death "does not stop *or* does not comply with the requirements of [subsection (a) or section 550.023]." Tex.Transp.Code Ann. § 550.021(c) (emphasis added); *see also Sheridan v. State*, 950 S.W.2d 755, 757–58 (Tex.App.—Fort Worth 1997, no pet.); *Elias*, 693 S.W.2d at 587.

Thus, the fifth element can be satisfied by proof that an operator of a vehicle knowingly involved in an accident involving injury or death:

(1) failed to immediately stop his vehicle at the scene or as close to the scene as possible;

(2) failed to immediately return to the scene if he did not stop there; or

(3) failed to remain at the scene until he had:

(a) given his name and address, the registration number of his vehicle, and the name of his liability insurer to any others involved in the collision;

(b) shown his driver's license to anyone involved in the collision, if requested; or

(c) provided any person injured in the accident reasonable assistance, including transporting or making arrangements for transporting the person to a physician or hospital for medical treatment if it was apparent that treatment was necessary, or if the injured person requested transportation.

*See* Tex.Transp.Code Ann. §§ 550.021(a), (c), 550.023; *see also Elias*, 693 S.W.2d at 587.

the provisions of article 6701d in the Transportation Code, it stated expressly that no substantive change was intended. *See* Act of May 1, 1995, 74th Leg., R.S., ch. 165, § 25,

The indictment in this case alleges that St. Clair committed the offense in two different ways: (1) by failing to remain at the scene and give his name and address to any person involved; or (2) by failing to remain at the scene and provide reasonable assistance to Anderson when it was apparent that she needed treatment. *See Kitchens v. State*, 823 S.W.2d 256, 258 (Tex.Crim.App.1991); *Sperling v. State*, 924 S.W.2d 722, 727 (Tex.App.—Amarillo 1996, pet. ref'd); Tex.Code Crim.Proc.Ann. art. 21.24(b) (Vernon 1989). When an indictment alleges alternative means for the commission of an offense, the conviction will stand if the evidence supports any of the theories alleged. *Rosales v. State*, 4 S.W.3d 228, 231 (Tex.Crim.App.1999); *Kitchens*, 823 S.W.2d at 259.

The issues St. Clair raises in his fourth point, whether Anderson's injuries were "reasonably apparent" and whether St. Clair's duty to provide "reasonable assistance" was obviated by the presence of others at the scene, relate only to the second of the alternative means the State alleged in the indictment. He does not challenge the sufficiency of the evidence to show that he failed to remain at the scene of the accident and give his name and address to Anderson, the first alternative means alleged. Accordingly, we overrule his fourth point. *See id.*

## INTOXICATION ASSAULT

St. Clair argues in his fifth point that the evidence is legally insufficient to support his conviction for intoxication assault because the State failed to prove beyond a reasonable doubt that Anderson suffered serious bodily injury as a result of the collision and because the results of his blood test were inadmissible because his blood specimen was unlawfully obtained.

1995 Tex.Gen.Laws 1025, 1871; *Baker v. State*, 974 S.W.2d 750, 750 (Tex.App.—San Antonio 1998, pet. ref'd). Thus, the elements remain unchanged.

When we consider a legal sufficiency challenge, we "must consider even improperly admitted evidence." *Hill v. State*, 3 S.W.3d 249, 252 n. 3 (Tex.App.—Waco 1999, pet. ref'd) (citing *Rodriguez v. State*, 819 S.W.2d 871, 873 (Tex.Crim.App. 1991)). Thus, the admissibility of the results of St. Clair's blood test have no bearing on the legal sufficiency of the evidence. *See id.* Accordingly, we focus on whether the State introduced legally sufficient evidence to show that Anderson suffered serious bodily injury as a result of the collision. This involves two separate inquiries: (1) whether Anderson suffered the miscarriage as a result of the collision; and (2) if so, whether a miscarriage constitutes "serious bodily injury."

### Causation

Section 6.04(a) of the Penal Code sets forth the general principal of causation required to establish criminal responsibility:

(a) A person is criminally responsible if the result would not have occurred but for his conduct, operating either alone or concurrently with another cause, unless the concurrent cause was clearly sufficient to produce the result and the conduct of the actor clearly insufficient.

Tex.Pen.Code Ann. § 6.04(a) (Vernon 1994).

When the conduct of the accused as well as other potential actions or conditions could have caused the victim's injury, the accused will nevertheless be held criminally responsible, unless the other causes were clearly sufficient to produce the injury, "and the conduct of the [acccused] clearly insufficient." *Id.* Thus, the evidence of causation will be legally insufficient in such a case only when the conduct of the accused, standing alone, was "clearly insufficient" to cause the injury. *See Hutcheson v. State*, 899 S.W.2d 39, 41 (Tex.App.—Amarillo 1995, pet. ref'd); *Contreras v. State*, 838 S.W.2d 594, 606 (Tex.App.—Corpus Christi 1992, pet. ref'd); *see also Robbins v. State*, 717 S.W.2d 348, 351 (Tex.Crim.App.1986); *Adams v. State*, 969 S.W.2d 106, 112 (Tex. App.—Dallas 1998, no pet.).

Anderson first noticed the bloody discharge between four and four-and-one-half hours after the collision. It was determined the following morning that she had suffered a miscarriage. The State called Doctor Arthur Raines to provide expert testimony concerning Anderson's injury. Raines testified that "a physical external trauma such as a car accident" could cause a miscarriage. He also identified several medical conditions which could potentially cause a miscarriage. He conceded on cross-examination that he could not "prove a causal relationship" between the collision and the miscarriage.

Doctor Raines testified that a vehicular collision could cause a woman to suffer a miscarriage. Thus, the record contains evidence that St. Clair's conduct in causing the collision was not "clearly insufficient" to cause Anderson to suffer a miscarriage. *Id.* From Doctor Raines's testimony and the evidence that Anderson suffered the miscarriage shortly after the collision, we conclude that a rational trier of fact could have found that St. Clair caused Anderson to suffer a miscarriage.

### Serious Bodily Injury

For purposes of the intoxication assault statute, "serious bodily injury" "means injury that creates a substantial risk of death or that causes serious permanent disfigurement or protracted loss or impairment of the function of any bodily member or organ." Tex.Pen.Code Ann. § 49.07(b) (Vernon 1994). Doctor Raines testified that a fetus is a "bodily member." He testified that, if untreated, a miscarriage "in some cases" poses "a substantial risk of death for a woman" because it could lead to uncontrolled bleeding or a potentially fatal infection. He also testified that a miscarriage constitutes a permanent loss of a bodily member of the woman. Raines agreed on cross-examina-

tion that Anderson's miscarriage did not place her at substantial risk of death because she received appropriate treatment.

In a homicide or assault case involving an unborn child, the child himself cannot be an independent victim of the crime unless and until he is born alive. *See Cuellar v. State*, 957 S.W.2d 134, 139–40 (Tex.App.—Corpus Christi 1997, pet. ref'd); Tex.Pen.Code Ann. § 1.07(a)(26) (Vernon 1994). Under the civil law, the child remains a part of the mother and, logically, a "bodily member" of the mother until birth. *See Edinburg Hosp. Auth. v. Trevino*, 941 S.W.2d 76, 78–79 (Tex.1997); *Sosebee v. Hillcrest Baptist Med. Ctr.*, 8 S.W.3d 427, 435 (Tex.App.—Waco 1999, pet. filed) (mother of stillborn child may recover for "a personal injury including the loss of her fetus"). We see no reason why this aspect of the civil law should not apply equally in criminal cases. *See Cuellar*, 957 S.W.2d at 139–40.

The issue of whether the treatment Anderson received prevented her miscarriage from posing a substantial risk of death is immaterial. "The relevant inquiry is the extent of the bodily injury as inflicted, not after the effects have been ameliorated or exacerbated by medical treatment." *Barrera v. State*, 820 S.W.2d 194, 196 (Tex.App.—Corpus Christi 1991, pet. ref'd) (citing *Brown v. State*, 605 S.W.2d 572, 575 (Tex.Crim.App. [Panel Op.] 1980)); *accord Boney v. State*, 572 S.W.2d 529, 532 (Tex.Crim.App. [Panel Op.] 1978); *Pitts v. State*, 742 S.W.2d 420, 422 (Tex.App.—Dallas 1987, no pet.).

The parties do not dispute that Anderson suffered the permanent loss of the fetus. Doctor Raines testified that, if untreated, a miscarriage poses "a substantial risk of death for a woman" because it could lead to uncontrolled bleeding or a potentially fatal infection. From this evidence, we conclude that a rational trier of fact could have found that Anderson suffered serious bodily injury as a result of the collision because she suffered the pro-tracted loss of a bodily member and because her injury posed a substantial risk of death. Thus, we overrule St. Clair's fifth point.

## BLOOD–TEST RESULTS

St. Clair claims in his sixth and seventh points respectively that the court erred in admitting the results of his blood test because hospital personnel obtained a blood specimen from him in violation of his rights under the Fourth Amendment to the United States Constitution and article I, section 9 of the Texas Constitution. He avers in his eighth point that the court erred in admitting the results of the blood test because his arresting officers failed to warn him of the consequences for failing to provide a specimen, because he refused to submit to the taking of a specimen, and because the State failed to establish that qualified medical personnel drew the specimen. *See* Tex.Transp.Code Ann. §§ 724.013, 724.015, 724.017 (Vernon 1999). He concludes in his ninth point that, because his blood specimen was allegedly obtained in violation of these constitutional and statutory provisions, article 38.23 of the Code of Criminal Procedure requires that the results of his blood test be excluded from the evidence. *See* Tex.Code Crim. Proc.Ann. art. 38.23(a) (Vernon Supp. 2000).

The State first responds that any error was rendered harmless by St. Clair's admission that he was intoxicated at the time of the collision. *See Leday v. State*, 983 S.W.2d 713, 718 & nn. 6–7 (Tex. Crim.App.1998). As a general rule, the erroneous admission of evidence is rendered harmless by the admission of other similar evidence without objection. *Id.* However, the Court of Criminal Appeals expressly held in *Leday* that this rule does not apply when the complained-of evidence has allegedly been seized unlawfully. *Id.* at 725–26. Accordingly, we must address the merits of the issues presented.

■ The Fourth Amendment and article I, section 9 prohibit unreasonable searches and seizures conducted by the government or by private citizens acting as instruments or agents of the government. *Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. 602, 613–14, 109 S.Ct. 1402, 1411, 103 L.Ed.2d 639 (1989); *State v. Comeaux*, 818 S.W.2d 46, 49 (Tex.Crim. App.1991); *Woods v. State*, 970 S.W.2d 770, 774 (Tex.App.—Austin 1998, pet. ref'd). "To determine whether a private party acted as an instrument or agent of the government, the Supreme Court has advocated using the test of whether 'in light of all the circumstances, the private citizen must be regarded as acting as an instrument or agent of the state.'" *Comeaux*, 818 S.W.2d at 49 (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 487, 91 S.Ct. 2022, 2049, 29 L.Ed.2d 564 (1971)).

■ When an accused contends that evidence has been seized from him in violation of his constitutional or statutory rights, he bears the initial burden of proving that the government or a private party acting at the behest of the government has seized the evidence in question without a warrant. *See Russell v. State*, 717 S.W.2d 7, 9 (Tex.Crim.App.1986); *Lagaite v. State*, 995 S.W.2d 860, 865 (Tex.App.—Houston [1st Dist.] 1999, pet. ref'd).

The officer who followed St. Clair's ambulance to the hospital provided the primary testimony about what occurred once St. Clair arrived at the emergency room. This officer testified that hospital personnel obtained a blood specimen from St. Clair and tested it. The record contains no evidence that this specimen was obtained at the request or direction of a law enforcement official. The State subsequently obtained the blood-test results by subpoena.

■ From this record, we conclude that St. Clair failed to satisfy his initial burden of proving that hospital personnel were acting as instruments or agents of the police when they drew and tested his blood specimen. *Id.* Because the record contains no evidence that the drawing and testing of St. Clair's blood was done by a law enforcement official or a private citizen acting as an agent of the State, his federal and state constitutional rights against unreasonable search and seizure were not implicated. *See Clark v. State*, 933 S.W.2d 332, 333 (Tex.App.—Corpus Christi 1996, no pet.); *State v. Hurd*, 865 S.W.2d 605, 606–07 (Tex.App.—Fort Worth 1993, no pet.); *see also State v. Hardy*, 963 S.W.2d 516, 523–24 (Tex.Crim.App.1997). Accordingly, we overrule St. Clair's sixth and seventh points.

In a similar manner, because St. Clair failed to produce evidence that a law enforcement official requested him to submit a blood specimen, he failed to establish the applicability of the requirements of the Transportation Code on which he relies. *Cf.* Tex.Transp.Code Ann. §§ 724.013, 724.015, 724.017. Accordingly, we overrule St. Clair's eighth point.

St. Clair argues in his final point that his blood test results should have been excluded under article 38.23 of the Code of Criminal Procedure because they were allegedly obtained in violation of the aforementioned federal and state constitutional and statutory provisions. We have determined that St. Clair failed to establish that any of these provisions were violated. He provides no other basis for the exclusion of the results. Accordingly, we overrule his ninth point. *See Woods*, 970 S.W.2d at 775.

We affirm the judgment.