

# IN THE
# TENTH COURT OF APPEALS

No. 10-08-00410-CR

BRANDON MOORE,

Appellant

 v.

THE STATE OF TEXAS,

Appellee

From the 272nd District Court
Brazos County, Texas
Trial Court No. 07-05683-CRF-272

## MEMORANDUM OPINION

A jury found Appellant Brandon Moore guilty of the offense of aggravated assault on a public servant. The trial court assessed his punishment, enhanced by a previous felony conviction, at twenty-eight years' imprisonment. In two issues, Moore contends that the evidence is legally and factually insufficient to prove he caused serious bodily injury to the complainant. Moore does not challenge whether the complainant's injury constituted "serious bodily injury"; rather, Moore challenges whether the complainant suffered the injury as a result of his actions. We will affirm.

The court of criminal appeals recently held that there is "no meaningful distinction between the *Jackson v. Virginia* legal-sufficiency standard and the *Clewis* factual-sufficiency standard" and that "the *Jackson v. Virginia* legal-sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt. All other cases to the contrary, including *Clewis*, are overruled." *Brooks v. State*, No. PD-0210-09, 2010 WL 3894613, at *8, 14 (Tex. Crim. App. Oct. 6, 2010). Accordingly, we will apply the same standard of review to both of Moore's sufficiency complaints.

When reviewing a challenge to the sufficiency of the evidence to establish the elements of a penal offense, we must determine whether, after viewing all the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). Our duty is to determine if the finding of the trier of fact is rational by viewing all of the evidence admitted at trial in the light most favorable to the verdict. *Adelman v. State,* 828 S.W.2d 418, 422 (Tex. Crim. App. 1992). In doing so, any inconsistencies in the evidence are resolved in favor of the verdict. *Curry v. State,* 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).

Section 6.04(a) of the Penal Code states: "A person is criminally responsible if the result would not have occurred but for his conduct, operating either alone or concurrently with another cause, unless the concurrent cause was clearly sufficient to produce the result and the conduct of the actor clearly insufficient." TEX. PEN. CODE

ANN. § 6.04(a) (Vernon 2003). Under this section, a "but for" causal connection must be established between the defendant's conduct and the resulting harm. *Robbins v. State*, 717 S.W.2d 348, 351 (Tex. Crim. App. 1986). If concurrent causes are present, two combinations exist to satisfy the "but for" requirement: (1) the defendant's conduct may be sufficient by itself to have caused the harm, regardless of the existence of a concurrent cause; or (2) the defendant's conduct and the other cause together may be sufficient to have caused the harm. *Id.* However, section 6.04(a) further defines and limits the "but for" causality for concurrent causes by the last phrase, "unless the concurrent cause was clearly sufficient to produce the result *and* the conduct of the actor clearly insufficient." *Id.* (emphasis added). Thus, the evidence of causation will be insufficient in this case only if Moore's conduct, standing alone, was "clearly insufficient" to cause the injury. *See St. Clair v. State*, 26 S.W.3d 89, 100 (Tex. App.—Waco 2000, pet. ref'd).

In this case, Sergeant Robert Johnson of the Bryan Police Department testified that, on June 7, 2007, he was on patrol, wearing his full police uniform and driving a marked patrol unit, when he received a call to assist two undercover officers in executing an arrest warrant on Moore. When Johnson arrived at the location, he saw Moore and told him he needed to talk to him. Johnson had Moore put his hands on the trunk of the patrol car while he confirmed that the warrants were ready to be executed. Johnson then attempted to place Moore under arrest. Johnson asked for Moore's left hand, and as he went to grab Moore's left hand, Moore pulled away from him. As Johnson pushed Moore up against the patrol car to try and keep control of him, another

person approached. Johnson turned his attention to the other person, pointed to him, and said, "You need to stay back across the street." When Johnson did that, Moore was able to "whip his body around" and then tackled Johnson. When asked how hard he hit the ground, Johnson replied:

> I hit the ground -- it was pretty hard. I think the back part of my left hip around the waistline, that is what hit the ground first.
>
> And Mr. Moore was right on top of me, and his body weight and my body weight; we crashed against the concrete and pretty much drove my shoulder into the rest of my body as well, so I got jarred pretty good.

Johnson was trying to hold onto Moore, but when the other person approached them again, Johnson decided that "this was kind of a fight-for-your-life-now type of deal." Johnson let go of Moore, yelled at the other person to get back, and grabbed his radio and called for assistance. Moore took off running, and the other person ran across the street. Johnson got up and chased Moore. He eventually caught up to Moore and tackled him. Johnson attempted to place Moore under arrest again, but Moore again resisted being handcuffed. One of the undercover officers arrived to help, and, together, Johnson and the undercover officer were able to put Moore in handcuffs. Moore was then placed in another officer's patrol car for transport. Johnson testified that he knew he was hurt when he hit the concrete and even when he was chasing Moore, but once Moore had finally been placed in the patrol car, that is when Johnson "really knew that something was wrong. I started getting really tight in my back. I was sore all over. I just know I was hurting."

In 1994 while going through Army Airborne School, Johnson had sustained a herniated disk in his lower back. He had surgery to repair the herniated disk in 1995. After the surgery, Johnson strained the muscles in his back a couple of times while in the Army, "doing a rough march or something like that," but he received pain medication and that was the extent of it.

Johnson testified that he had no other problems with the vertebrae or disks in his back after his surgery until the incident with Moore. Since September 2003, he had been on the SWAT team at the Bryan Police Department, and he was in top physical condition.

When asked about the first night following the incident with Moore, Johnson replied:

> I didn't sleep that well. My back hurt a lot. My shoulder was aching, and I didn't -- from shoulder, my arm was pretty numb, the fingertips were tingling a lot.
>
> But the most pain I had was in my lower back and I had a pain going down my leg.

On a scale of one to ten, Johnson ranked his pain during the first night at "[p]robably around 7 or 8." The next morning he got up with the same kind of aches and pains as the day before and feared there was "probably something a little more wrong than just getting jarred up and not feeling well." Johnson decided he needed to see the doctor and went to see Dr. Thomas Welch.

Dr. Welch testified that Johnson came to see him in June 2007. Johnson indicated to him that he had been injured in an altercation with a prisoner when they had

wrestled and both gone down to the ground. Johnson never indicated that, prior to the incident, he was having symptoms of pain or any significant symptoms of impairment or loss of use. Johnson complained of back pain and hip pain on the right side that went into his leg, as well as shoulder pain. Dr. Welch began treating these injuries with medications to alleviate some of the pain. Johnson was still trying to work at that time, but, as time went on, Dr. Welch initiated some physical therapy to try to help with treating the back and shoulder area, and Johnson eventually needed his job modified because he was not able to continue to perform. Johnson also underwent at least one cortisone injection into the spine to try to alleviate the pain, but his symptoms persisted. Dr. Welch opined that although it could have been something else, if Johnson was not reporting any impairment or pain and suddenly was involved in an altercation during which he was slammed to the ground causing his back and hip to impact concrete and causing him to immediately feel significant pain and impairment, then the injury and the cause of his pain, in all medical probability, were due to the injuries sustained during the altercation.

Because Johnson had persisting symptoms and because there were some findings on an MRI that would indicate there was nerve impingement, Dr. Welch sent Johnson to Dr. Rudy Briner, a neurosurgeon. Dr. Briner testified that the history Johnson reported to him was that sometime before the incident with Moore, Johnson had had an operation on his back but that he had recuperated very well. But after the altercation with Moore,

He primarily had pain in the right hip and down his leg, and it was an activity-related pain, him being up on his feet or attempting any vigorous physical walks for a distance. He couldn't run.

He couldn't do any of the jogging or exercise that he was used to, and he couldn't do the physical performance tests that the police go through -- I am not sure what they call them -- while he had attempted and made an effort to do those things.

Dr. Briner initially gave Johnson several epidural steroid injections to calm the pinched nerve. They did not help. Dr. Briner eventually operated on Johnson on February 20, 2008. During the operation, Dr. Briner found a "mushy disk," which "irritates the nerve over and over. Weightbearing makes it squish out and kind of bang against the nerve." Dr. Briner opined that the "mushy disk" was not caused by Johnson's prior back operation. Dr. Briner testified:

Q. So in medical probability would it be fair to say if this was something that had been caused by the prior surgery, this would have been a hardened disk as you indicated before, and you needed to chip way [sic] at it?

A. Right.

Q. But the fact that this was a mushy disk, did that tell you that this injury may have been more recent, based on medical probability?

A. A soft disk that is herniated and pushing out is the typical thing that we see in that situation where some trauma stresses the disk past its ability to withhold the pressure.

Q. Okay. But not related to a previous surgical procedure?

A. Right.

Dr. Briner also stated generally that a herniated disk can be caused by coughing or sneezing while in the wrong position or by lifting and bending and twisting activities,

but he opined specifically that Moore's act of tackling Johnson to the concrete could have caused Johnson's injury.  Dr. Briner testified:

> Q.    Great.  Of course, you weren't there in June of 2007 when Officer Johnson was injured?
>
> A.    That's correct.
>
> Q.    But would the type of injury that occurred in Officer Johnson's back, would that be consistent with someone receiving impact to their hip bone or to their back upon striking the ground which would be made of concrete or a flat surface?
>
> A.    It certainly could.

Because of Dr. Briner's testimony, the record contains evidence that Moore's conduct was not "clearly insufficient" to cause Johnson's injury.  *See id.*  Moreover, based on both Dr. Briner's and Dr. Welch's testimony as well as Johnson's testimony of his ongoing pain which began when Moore tackled Johnson, we conclude that a rational trier of fact could have found that Moore caused Johnson's injury.  We overrule Moore's issues and affirm the trial court's judgment.


                                        REX D. DAVIS
                                        Justice

Before Chief Justice Gray,
        Justice Reyna, and
        Justice Davis
Affirmed
Opinion delivered and filed November 10, 2010
Do not publish
[CRPM]