

# NUMBER 13-11-00303-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

ANDREW CANALES,                                                          Appellant,

v.

THE STATE OF TEXAS,                                                      Appellee.

## On appeal from the 319th District Court
## of Nueces County, Texas.

## MEMORANDUM OPINION

### Before Chief Justice Valdez and Justices Benavides and Perkes
### Memorandum Opinion by Chief Justice Valdez

Appellant, Andrew Canales, raises one issue in this appeal from his conviction for the first-degree felony offense of aggravated assault against a public servant. *See* TEX. PENAL CODE ANN. § 22.02(a)(2) (West 2011).  We affirm.

## I. BACKGROUND

Appellant's case was tried before a jury.[1]  John Esparza, a warrants officer with the Nueces County Sheriff's Office, testified that, on June 25, 2010, he observed appellant driving a black Ford Mustang in the parking lot of a Home Depot in Corpus Christi, Texas.  Esparza identified appellant as the subject of one or more outstanding warrants and signaled appellant to stop by "tapping the sirens" of his vehicle.  Instead of stopping, appellant drove through the parking lot to Port Street and then accelerated to a "high rate" of speed.

Appellant ignored stop signs as he drove toward the La Armada housing project.  Once inside the housing project, appellant slowed down to approximately five miles per hour while he was apparently looking for a place to run.  Esparza continued to follow appellant.  Deputy Roger Mirabal was a passenger in a second vehicle, which came to a stop in the middle of an intersection in the path of appellant's vehicle.  After Mirabal exited his vehicle, Esparza saw appellant "speed up with an intention to hit Deputy Mirabal."  Appellant's vehicle was between 15 and 20 feet away from Mirabal's vehicle when appellant began accelerating.  Mirabal jumped up and landed on the hood of appellant's vehicle just before it slammed into Mirabal's vehicle, causing damage to the rear passenger door.

Ernest Moreno, a deputy sheriff assigned to the Warrants Division, was Esparza's partner on the day in question.  Moreno testified that he saw appellant ram Mirabal's vehicle as Mirabal and his partner were exiting the vehicle.  Mirabal had to

---

[1] Appellant was charged in a five-count indictment with the following offenses:  (1) assault on a public servant; (2) possession with intent to deliver methamphetamine; (3) possession with intent to deliver cocaine; (4) evading arrest or detention with a vehicle; and (5) unlawful restraint.  Appellant pleaded guilty to the three charges involving possession of drugs and evading arrest.  Appellant pleaded not-guilty to the other two charges, assault on a public servant and unlawful restraint.

jump on top of the hood of appellant's vehicle to get out of the way. Appellant then exited his vehicle and ran away. There was no question in Moreno's mind that appellant tried to use his vehicle to hit Mirabal.

Mirabal testified that appellant's vehicle was approximately 25 feet away from him when it came to a stop. Mirabal was exiting his vehicle when appellant began accelerating toward him at approximately 20 miles per hour. Mirabal had to jump up to avoid the vehicle because appellant was coming right at him. According to Mirabal, there was no chance that it was an accident. Mirabal believed that appellant tried to kill him.

Robert Balderas, a deputy sheriff with the Nueces County Sheriff's Office, was Mirabal's partner on the day in question. Balderas testified that when appellant entered the La Armada housing project, appellant's vehicle slowed down and eventually came to a stop. Balderas then parked his unit approximately 35 feet in front of appellant's vehicle and blocked the intersection. Mirabal was getting out of their unit to approach appellant's vehicle when Balderas heard Mirabal say, "Oh, shit." Balderas then felt an impact as he was getting out of the unit, almost knocking him out of his seat. According to Balderas, if Mirabal had not jumped on top of appellant's vehicle, he probably would have been pinned between the two cars. Balderas did not believe it was an accident because appellant first stopped and then sped up to ram their vehicle. Balderas considered appellant's vehicle to be a deadly weapon based on the way it had been used.

Lourdes Najera, an investigator with the Criminal Investigation Division of the Nueces County Sheriff's Department, also testified. He was called out to the scene of

the arrest after appellant was apprehended. He took photographs of the scene and the evidence. He also interviewed appellant's passenger, Alexis Nichole Valdez, at the sheriff's department. Although Valdez was excited and nervous, she was coherent and able to understand Najera's questions. A transcript of the interview was introduced into evidence. Valdez told Najera that appellant would not let her exit his vehicle. She also said that she was in fear for her life. According to Valdez, before he rammed Mirabal's vehicle, appellant said, "I'm going to run him over. I don't give a fuck. They're not going to catch me."

At trial, Valdez testified as follows:

Q. He just plowed into the unit?

A. [Appellant] did not slow down at all. When he realized the cop – the cop that blocked him off, as [he] hit the cop car, he stopped and got out. He didn't even put it in park. He stopped and got out and ran. No more than ten steps, and he was gone. All these cops pepper sprayed him, and they tackled him.

Q. So he kept on going, right?

A. And when the cop car came, he still hit the cop car. If he wouldn't have slowed down, he would have wrecked into the cop car and killed me and the cop.

Q. Well, did he wreck into the cop car or not?

A. No, because he slowed down and ran, because he thought he was going to get away.

Q. Again, I didn't get – did he wreck into the unit or not?

A. Yes, he did wreck into the unit. Then he stopped, got out of the car, did not put it in park and ran, because he thought he was going to get away, like he said, and he didn't.

Q. And before he had wrecked into that unit, he never stopped?

A. No.

4

Q. He never came to a complete stop?

A. No.

Appellant testified that he thought he had blown out his transmission as he was fleeing. The engine was revving loudly because he was flooring it, but the car was barely moving. When he saw Mirabal's unit trying to cut him off, he opened the door and bailed out of his car. His vehicle was "rolling very slow[ly]," less than 5 miles per hour. According to appellant, Mirabal was still seated in his vehicle when appellant exited his vehicle, which according to appellant, was "barely moving." Appellant testified that he was "very high" on drugs at the time. He acknowledged resisting arrest after the officers chased him down on foot.

The jury found appellant guilty of aggravated assault against a public servant and assessed a 45-year prison sentence as punishment.[2] This appeal ensued.

## II. ANALYSIS

Appellant argues that the evidence is legally insufficient to support his conviction.

### A. Standard of Review

The court of criminal appeals has held that there is "no meaningful distinction between the *Jackson v. Virginia* legal sufficiency standard and the *Clewis* factual-sufficiency standard" and that the *Jackson* standard "is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt." *Brooks v. State*, 323 S.W.3d 893, 902–03, 912 (Tex. Crim. App. 2010) (plurality op.) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Accordingly,

---

[2] Appellant was found not guilty of unlawful restraint.

we review claims of evidentiary insufficiency under "a rigorous and proper application of the *Jackson* standard of review." *Id.* at 906–07, 912. Under the *Jackson* standard, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319; *see Brooks*, 323 S.W.3d at 898–99 (characterizing the *Jackson* standard as: "Considering all of the evidence in the light most favorable to the verdict, was a jury rationally justified in finding guilt beyond a reasonable doubt"). The fact-finder is the exclusive judge of the credibility of witnesses and of the weight to be given to their testimony. *Anderson v. State*, 322 S.W.3d 401, 405 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd) (citing *Lancon v. State*, 253 S.W.3d 699, 707 (Tex. Crim. App. 2008)). Reconciliation of conflicts in the evidence is within the fact-finder's exclusive province. *Id.* (citing *Wyatt v. State*, 23 S.W.3d 18, 30 (Tex. Crim. App. 2000)). We must resolve any inconsistencies in the testimony in favor of the verdict. *Id.* (citing *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000)).

"[S]ufficiency of the evidence should be measured by the elements of the offense as defined by the hypothetically correct jury charge for the case." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997) (en banc); *see Trevino v. State*, 228 S.W.3d 729, 736 (Tex. App.—Corpus Christi 2006, pet. ref'd). "Such a charge would be one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Malik*, 953 S.W.2d at 240.

6

**B. Applicable Law**

A person commits aggravated assault with a deadly weapon if he: (1) intentionally or knowingly; (2) threatens imminent bodily injury to another; (3) using or exhibiting a deadly weapon; (4) during the commission of the assault. *See* TEX. PENAL CODE ANN. §§ 22.01(a)(2), 22.02(a)(2) (West 2011). The offense is a first-degree felony if it is committed against a person the actor knows is a public servant while the public servant is lawfully discharging an official duty. *See id.* § 22.02(b)(2)(B).

**C. Discussion**

Appellant argues that the evidence is insufficient to prove that he acted intentionally or knowingly. According to appellant, the jury's verdict acquitting him of the charge of unlawful restraint indicates that the jury did not believe Valdez's testimony. Appellant argues that this Court should therefore disregard Valdez's testimony in its entirety in conducting our review of the sufficiency of the evidence. In addition, appellant argues that we should also disregard evidence of the statement that Valdez made to law enforcement after she was taken into police custody. Specifically, Valdez told police that, prior to striking Mirabal's vehicle, appellant allegedly said, "I'm going to run him over. I don't give a fuck. They're not going to catch me."

Furthermore, according to appellant, photographs of Mirabal's vehicle, which were admitted into evidence at trial, indicated that the vehicle sustained very little damage, which is consistent with appellant's version of events (i.e., his vehicle coasted and rolled into the Mirabal's vehicle) and inconsistent with the State's version of events (i.e., appellant threatened to ram Mirabal with his vehicle). Appellant argues that, given

7

this physical evidence and his testimony, the jury's finding that he acted intentionally or knowingly is not a rational finding. We disagree.

The jury was free to believe or disbelieve all or part of Valdez's testimony. *See Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010) ("[The finder of fact] is entitled to believe or disbelieve all or part of the witness's testimony—even if that testimony is uncontroverted—because he has the opportunity to observe the witness's demeanor and appearance."). In this case, it appears the jury may not have believed part of Valdez's testimony concerning the charge of unlawful restraint, while it did accept other aspects of Valdez's testimony concerning the charge of aggravated assault. In viewing the evidence in the light most favorable to the prosecution, we must credit those parts of Valdez's testimony which support the jury's verdict. *See Brooks*, 323 S.W.3d at 898–99. Accordingly, we disagree with appellant's argument that we should disregard Valdez's testimony concerning his intent.

A person can communicate a threat by conduct as well as by words. *St. Clair v. State*, 26 S.W.3d 89, 97 (Tex. App.—Waco 2000, pet. ref'd) (citing *McGowan v. State*, 664 S.W.2d 355, 357 (Tex. Crim. App. 1984)). Moreover, a motor vehicle can be used as a deadly weapon. *See Ex parte McKithan*, 838 S.W.2d 560, 561 (Tex. Crim. App. 1992) (en banc) (holding that "[a] motor vehicle, in the manner of its use or intended use, is clearly capable of causing death or serious bodily injury and therefore can be a deadly weapon."). In this case, Valdez's statements and the eyewitness testimony of the law enforcement agents involved in the events at issue established that appellant was attempting to evade arrest when he drove his vehicle into Mirabal's vehicle and proceeded to flee on foot. The evidence indicates that appellant had threatened to and

8

in fact attempted to strike Mirabal with his vehicle in order to make his escape. A rational jury could have inferred that appellant acted knowingly or intentionally based on his actions and the surrounding circumstances. *See Ledesma v. State*, 677 S.W.2d 529, 531 (Tex. Crim. App. 1984) ("Absent a judicial confession, the requisite culpable mental state must ordinarily be inferred from the acts of the accused or the surrounding circumstances."). Accordingly, we conclude that the evidence was sufficient to support the jury's finding that appellant intentionally or knowingly used a deadly weapon to threaten a peace officer with imminent bodily injury. *See* TEX. PENAL CODE ANN. §§ 22.01(a)(2), 22.02(a)(2), (b)(2)(B). Appellant's sole issue is overruled.

### III. CONCLUSION

The judgment of the trial court is affirmed.

_____
ROGELIO VALDEZ
Chief Justice

Do not Publish.
TEX. R. APP. P. 47.2(b)
Delivered and filed the
1st day of November, 2012.

9