COURT OF APPEALS

EIGHTH DISTRICT OF TEXAS

EL PASO, TEXAS





AARON TARIN,


 Appellant,


v.


THE STATE OF TEXAS,


 Appellee.
§



§


§


§


§

No. 08-02-00202-CR


Appeal from the


409th District Court


of El Paso County, Texas


(TC# 20010D04490)

 


M E M O R A N D U M O P I N I O N



 This is an appeal from a jury conviction for the offense of aggravated assault on a
public servant. The jury assessed punishment at five (5) years' probation. We affirm the
judgment of the trial court. 

I. SUMMARY OF THE EVIDENCE


 At trial, Officer Gabriel Lechuga testified that he was a patrolman for the El Paso
Police Department working out of the Westside Regional Command Center. In the late
evening of September 8, 2001, Officer Lechuga and his partner, Officer David Moreno, were
dispatched to a noise disturbance in the 6400 block of Ojo de Agua Street on the west side
of El Paso. They were traveling eastbound on that residential street when Appellant and
another individual driving motorcycles were traveling westbound at a very high rate of speed. 
The posted speed limit in that area was thirty-miles-per hour. The officers made a u-turn and
followed the motorcyclists to see if they came to any harm. The officers were unable to catch
up with the motorcyclists, but they were able to follow approximately a quarter of a mile
behind them. Both riders were wearing helmets.

 The motorcyclists were seen slowing down and turn into a cul-de-sac. The officers
activated the overhead lights as they approached the cul-de-sac. The riders had turned
around in the cul-de-sac and had stopped their motorcycles. The officers pulled into the cul-de-sac and stopped fifteen feet in front of the riders. Officer Lechuga exited the patrol car. 
As he did so, one of the motorcyclists accelerated and sped past him. Officer Lechuga was
forced to jump out of the way, dropping his flashlight. He picked up the flashlight and
pointed the back end of it at Appellant and gave him a direct command not to move. 

 Officer Lechuga testified that he and Appellant maintained eye contact for three to
four seconds. As Officer Lechuga approached within twelve to fifteen feet of the
motorcycle, Appellant revved up his engine and proceeded to drive directly at Officer
Lechuga. He jumped out of the way. Officer Lechuga testified that he jumped out of the
path of the motorcycle, otherwise, he would have been struck. Officer Lechuga testified that
the motorcycle missed him by about one inch, feeling the wind as it passed. Officer Lechuga
testified that it was his belief that he would have been hit "straight on" by the motorcycle had
he not jumped out of the way. Officer Lechuga stated, "I saw flying over his bike" so he
thought the motorcycle had hit a curb. The motorcycle traveled about forty to fifty feet from
a stationary position in the cul-de-sac to where it finally came to rest. 

 Officer Lechuga further testified that he proceeded to check on Appellant's condition
and saw that he was not seriously injured. Appellant was then placed under arrest. Appellant
stated that he thought his leg was broken and Officer David Moreno called EMS. 

 Finally, Officer Lechuga testified that he was "pretty shaken" as a result of
Appellant's actions, and he felt threatened with imminent bodily injury. He believed he
would have been killed if Appellant had hit him with the motorcycle. It was Officer
Lechuga's opinion that Appellant was trying to escape as he had seen his friend escape, and
the only way to accomplish this was to drive through Officer Lechuga after he directed
Appellant to stop. 

 Officer David Moreno of the El Paso Police Department testified that Officer Lechuga
got out of the patrol car when they stopped in the cul-de-sac. He saw the first motorcycle
speed past Officer Lechuga, then Officer Lechuga ordered Appellant not to move. Officer
Moreno saw Appellant take off at a high rate of speed, forcing Officer Lechuga to jump out
of the way. He testified that it was his belief that had Officer Lechuga not jumped out of the
way, he would have been struck by Appellant's motorcycle. 

 Officer Moreno further testified that he proceeded to turn the patrol car around, he
saw Appellant on the ground and Officer Lechuga was putting handcuffs on him. Officer
Moreno stated that Appellant's motorcycle traveled about fifty yards from its stationary
position in the cul-de-sac to where it finally came to rest. He clarified that he did not see
Appellant's motorcycle hit the curb, nor did he see Appellant fly forward. 

 Joanna Overton, an El Paso Emergency Medical Technician, testified she responded
to the call and that at the time, Appellant was cooperative. No one told her that Appellant
had assaulted a police officer. 

 Tyler Grossman, an officer with the motorcycle unit of the El Paso Police Department,
testified that he had been around motorcycles since he was fourteen years old. He stated that
he had received special training in motorcycles as part of his police assignment, taking
classes which included training on the physics of moving vehicles and the kinetic energy they
possess taking into account their weight and speed. 

 Officer Grossman stated that Appellant's Yamaha street motorcycle weighed about
four-hundred pounds. With a rider, the weight would be about six-hundred pounds. The
officer testified that such a vehicle accelerating from a stationary position into a person
standing twelve to fifteen feet away could indeed cause serious bodily injury to that
individual. 

 Appellant, a twenty-four-year-old firefighter with the El Paso Fire Department,
testified in his own defense. Appellant related that on September 8, 2001, he was getting
gasoline for his motorcycle when another motorcyclist who he had previously met, drove into
the gas station. The two agreed to take a ride together and proceeded to drive around the
west side of El Paso. Appellant followed the other motorcyclists. 

 The two passed the two officers and they shined the light of their patrol car on them. 
Appellant thought the officers were telling them to slow down as he knew they were
speeding. They did slow down. After going several blocks, Appellant looked back and he
did not see the patrol car. He followed the other rider into a cul-de-sac. As they turned
around in the cul-de-sac, Appellant saw that the patrol car was turning into the cul-de-sac
behind them. The patrol car did not have its overhead lights on nor did it have its headlights
on. 

 As the patrol car stopped, an officer jumped out. Appellant stated that, at that time,
he was going between five and ten miles per hour. He had to lay his motorcycle down to
avoid a collision with the officer. Appellant testified that he did not intend to escape nor
evade arrest. He denied that he tried to threaten or scare the officers. His injuries consisted
of a sprained ankle, while the damage to the motorcycle was minimal. When Officer
Lechuga approached, he told Appellant that he tried to hit him and the officer punched
Appellant. He was then handcuffed, but later the handcuffs were removed when he was
transported to the hospital. Appellant also testified that the only injury he sustained was a
sprained right ankle, and that the damage to the motorcycle was minor. 

 On cross-examination, Appellant stated he had to "lay his motorcycle down" to avoid
a collision with Officer Lechuga. He stated that his sole offense was speeding and that the
stories of the two police officers were fabrications. 

II. DISCUSSION


 In Issue No. One, Appellant asserts that the evidence is legally and factually
insufficient to support a finding that he intentionally or knowingly used his motorcycle in a
manner which would be capable of causing death or serious bodily injury. In Issue No. Two,
Appellant maintains that the evidence is legally and factually insufficient to support a finding
that Appellant intentionally and knowingly threatened Officer Lechuga with imminent bodily
injury. 

 In reviewing the legal sufficiency of the evidence, we are constrained to view the
evidence in the light most favorable to the judgment to determine whether any rational trier
of fact could find the essential elements of the offense, as alleged in the application
paragraph of the charge to the jury, beyond a reasonable doubt. Jackson v. Virginia, 443 U.S.
307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); Butler v. State, 769 S.W.2d 234, 239 (Tex. Crim.
App. 1989); Humason v. State, 728 S.W.2d 363, 366 (Tex. Crim. App. 1987). More
particularly, sufficiency of the evidence should be measured by the elements of the offense
as defined by the hypothetically correct jury charge for the case. Malik v. State, 953 S.W.2d
234, 239-40 (Tex. Crim. App. 1997).

 Our role is not to ascertain whether the evidence establishes guilt beyond a reasonable
doubt. Stoker v. State, 788 S.W.2d 1, 6 (Tex. Crim. App. 1989), cert. denied, 498 U.S. 951,
111 S.Ct. 371, 112 L.Ed.2d 333 (1990); Dwyer v. State, 836 S.W.2d 700, 702 (Tex. App.--El
Paso 1992, pet. ref'd). We do not resolve any conflict in fact, weigh any evidence or evaluate
the credibility of any witnesses, and thus, the fact-finding results of a criminal jury trial are
given great deference. Menchaca v. State, 901 S.W.2d 640, 650-52 (Tex. App.--El Paso
1995, pet. ref'd); Adelman v. State, 828 S.W.2d 418, 421 (Tex. Crim. App. 1992); Matson
v. State, 819 S.W.2d 839, 843 (Tex. Crim. App. 1991); Leyva v. State, 840 S.W.2d 757, 759
(Tex. App.--El Paso 1992, pet. ref'd); Bennett v. State, 831 S.W.2d 20, 22 (Tex. App.--El
Paso 1992, no pet.). Instead, our only duty is to determine if both the explicit and implicit
findings of the trier of fact are rational by viewing all the evidence admitted at trial in the
light most favorable to the verdict. Adelman, 828 S.W.2d at 421-22. In so doing, we resolve
any inconsistencies in the evidence in favor of the verdict. Matson, 819 S.W.2d at 843,
(quoting Moreno v. State, 755 S.W.2d 866, 867 (Tex.Crim.App. 1988)). The trier of fact,
not the appellate court, is free to accept or reject all or any portion of any witness's testimony. 
Belton v. State, 900 S.W.2d 886, 897 (Tex. App.--El Paso 1995, pet. ref'd).

 When conducting a review of the factual sufficiency of the evidence, we consider all
of the evidence, but we do not view it in the light most favorable to the verdict. Clewis v.
State, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996); Levario, 964 S.W.2d. 290, 295 (Tex.
App.--El Paso 1997, no pet.). We review the evidence weighed by the jury that tends to
prove the existence of the elemental fact in dispute and compare it with the evidence that
tends to disprove that fact. Johnson v. State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000); Jones
v. State, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996), cert. denied, 522 U.S. 832, 118 S.Ct.
100, 139 L.Ed.2d 54 (1997). A defendant challenging the factual sufficiency of the evidence
may allege that the evidence is so weak as to be clearly wrong and manifestly unjust, or in
a case where the defendant has offered contrary evidence, he may argue that the finding of
guilt is against the great weight and preponderance of the evidence. See Johnson, 23 S.W.3d
at 11. Although we are authorized to set aside the fact finder's determination under either of
these two circumstances, our review must employ appropriate deference and should not
intrude upon the fact finder's role as the sole judge of the weight and credibility given to any
evidence presented at trial. See Johnson, 23 S.W.3d at 7. We are not free to reweigh the
evidence and set aside a verdict merely because we feel that a different result is more
reasonable. Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997); Clewis, 922 S.W.2d
at 135.

 The application paragraph in the court's charge to the jury read, in relevant part:

 Now if you find from the evidence beyond a reasonable doubt that on or about
the 8th day of September, 2001 in El Paso County, Texas the Defendant Aaron
Tarin, did then and there intentionally or knowingly threaten Gabriel Lechuga
with imminent bodily injury and did then and there use and exhibit a deadly
weapon to-wit: a motorcycle, during the commission of said assault, and the
said Gabriel Lechuga was then and there a public servant, to-wit: a City of El
Paso Police Officer in the lawful discharge of an official duty, and the said
Defendant knew Gabriel Lechuga was a public servant, then you will find the
Defendant Aaron Tarin, guilty as charged in the indictment.


 Unless you so find beyond a reasonable doubt or if you have a reasonable
doubt thereof, you will acquit the Defendant, Aaron Tarin of aggravated
Assault against a Public Servant, as charged in the indictment. 


 Regarding Issue No. One, we find that the evidence is legally and factually sufficient
to support the jury's finding that the motorcycle was capable of causing death or serious
bodily injury; therefore, it was used as a deadly weapon. A motorized vehicle is not a deadly
weapon per se. Therefore the State must demonstrate that the manner in which the vehicle
is used was capable of causing death or serious bodily injury. See Tex. Penal Code Ann.
§ 1.07(a)(17)(B) (Vernon 2001); St. Clair v. State, 26 S.W.3d 89, 93 (Tex. App.--Waco 2000,
pet. ref'd).

 In the present case, Officer Lechuga testified that he and Appellant made eye contact,
that Appellant gunned his motorcycle and then accelerated at him from a standing position
at a high rate of speed. Officer Grossman stated that such a motorcycle, accelerating from
twelve to fifteen feet, was capable of causing death or serious bodily injury. Appellant's sole
evidentiary response to this evidence was that he did not drive the motorcycle at Appellant
at all. Given the above, we find the evidence to be legally sufficient to support the
conviction. 

 Regarding the factual sufficiency question, we note that Appellant did not provide
evidence diminishing the impact of the State's evidence. Consequently we find the evidence
factually sufficient to sustain the verdict regarding the use of the motorcycle as a deadly
weapon. Issue No. One is overruled in its entirety.

 In Issue No. Two, Appellant contends the evidence is legally and factually insufficient
to establish that he threatened Officer Lechuga with imminent bodily injury. Once again,
applying the applicable standard, we note that the evidence demonstrated that Officer
Lechuga and Appellant, while on his stationary motorcycle, made eye contact, that Appellant
gunned his motorcycle, and then proceeded to drive directly at Officer Lechuga, causing him
to jump out of the way to avoid injury. Officer Moreno corroborated this evidence to the
extent that Appellant accelerated his motorcycle at Officer Lechuga and he had to jump out
of the way. 

 Aiming a deadly weapon at an individual is sufficient to demonstrate a threat
regarding an aggravated assault conviction. See Anderson v. State, 11 S.W.3d 369, 375-76
(Tex. App.--Houston [1st Dist.] 2000, pet. ref'd). Here, that element was met and the
evidence is legally sufficient to support the conviction.

 Regarding the factual sufficiency of the threat, Appellant argues that there was
conflicting testimony from the officers regarding the distance Appellant traveled after hitting
the curb; the officer's testimony regarding the speed of Appellant's vehicle is inconsistent
with the minor damage to the motorcycle and his own injury; that no mention of an assault
charge was made in their radio dispatches; that the officers indicated that the incident was
of minor importance; Appellant was cooperative at the scene; and that the officer's testimony
was inconsistent regarding when they activated the overhead lights on their patrol car. 

 In this instance, while the evidence is certainly subject to two differing reasonable
interpretations, we do not find that the evidence is so contrary to the overwhelming weight
of the evidence as to be clearly wrong and unjust. Appellant, in effect, asks us to reweigh
the evidence when the jury chose to believe the officer's accounts as opposed to Appellant's
version of the events. Accordingly, Issue No. Two is overruled in its entirety.

 Having overruled each of Appellant's issues on review, we affirm the judgment of the
trial court.

February 25, 2004




 RICHARD BARAJAS, Chief Justice



Before Panel No. 4

Barajas, C.J., Larsen, and McClure, JJ.


(Do Not Publish)