NO. 07-05-0317-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL B



SEPTEMBER 28, 2007


 ______________________________



JESSE R. GARCIA, APPELLANT



V.



THE STATE OF TEXAS, APPELLEE


_________________________________



FROM THE 140TH DISTRICT COURT OF LUBBOCK COUNTY;



NO. 2002-400059; HONORABLE JIM BOB DARNELL, JUDGE


_______________________________




Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ. 

OPINION 


 Appellant Jesse R. Garcia was convicted of failure to stop and render aid and
sentenced to confinement in the Institutional Division of the Texas Department of
Corrections for two years and six months. Through four issues he contends the trial court
erred by (1) admitting his oral statement made without Miranda warnings, and (2) made
without the warnings required by Texas statute; (3) submitting a charge containing
improper conduct elements; and (4) submitting a charge that did not distinctly set forth the
law applicable to the case. Finding appellant was not in custody for purposes of the
statutory and constitutional warnings, and was not egregiously harmed by any charge error,
we affirm. 

Background 

 Pedestrian Earl Powell suffered severe injuries when stuck by a hit-and-run motorist
in Slaton, Texas. Law enforcement personnel immediately began searching for the
responsible party but were hindered by the absence of forensic evidence at the scene. 
Slaton police officer Billy Timms investigated leads which eventually led him to appellant's
girlfriend, Janie Martinez. His communication with Ms. Martinez in turn led to appellant.

 Timms contacted appellant at his workplace, Coronado High School in Lubbock. 
 At this stage of the investigation, all suspects other than appellant had been cleared. 
Appellant agreed to speak with Timms and voluntarily accompanied him to the school
cafeteria where Timms recorded their conversation. From background noises on the
recording, it appears appellant and Timms were not alone in the school cafeteria during
the interview.

 The interview lasted something less than eighteen minutes. Appellant was not
warned pursuant to Miranda v. Arizona (1) and the Code of Criminal Procedure (2) before or
during the interview. 

 In the interview, Timms' initial questioning of appellant focused on the current
location of appellant's vehicle from the perspective that Janie Martinez may have been the
driver who struck Powell. Appellant did not initially disagree that Martinez was driving his
vehicle on the night of the accident. Rather, appellant maintained at the time in question
it was dark, Powell's injuries were the result of an accident, and appellant and Martinez
would have stopped if appellant possessed liability insurance coverage. 

 Approximately eleven minutes into the interview, Timms bluntly told appellant that
he needed to know who was the driver and passenger at the time of the accident. 
According to the officer, if appellant was a passenger he was a witness but if he was the
driver, charges would be filed. He urged appellant to help himself and be honest in his
responses. Appellant then stated the only reason "we didn't stop or I didn't stop. Well let
me tell you I'm the one that was driving. And uh the only reason I didn't stop was because
I didn't have no insurance. And they had suspended my license."

 Timms responded, "I tell you what I'd like to do Jesse. I'd like to go back. If you
don't mind, I'll take you back to Slaton with me. We'll sit down and do a statement and as
soon as we get through with the statement I'll cut you loose, take you to the house and I'll
take, put all this paperwork together, run it to the DA's office, and let them see what they
want to do with it."

 Appellant replied, nonresponsively, that his windshield broke because he washed
his car and was operating the heater. Timms asked, "Did his face hit the car?" Appellant
responded, "I don't remember nothing. I just remember the impact." Timms added, "This
isn't the first one of these I've ever worked." Appellant then volunteered remorse at his
failure to stop and reiterated that the only reason he failed to stop was his lack of liability
insurance coverage. 

 Near the conclusion of the interview, when appellant asked to call his girlfriend,
Timms responded, "Why don't you wait." Appellant then called his employer telling him he
had to leave work because something had come up and he would call him the following
morning.

 Later that day appellant gave a written statement preceded by Miranda warnings. 
Among other averments in the document, appellant stated, "I told [Officer Timms during
their interview at appellant's workplace] I didn't know the address [where appellant left his
vehicle] and he asked if I would take him to it. I told him I would show him where it was
parked." 

 Appellant was subsequently indicted and tried for failure to stop and render aid. 
Tex. Transp. Code Ann. § 550.021 (Vernon 1999). A jury set punishment at two years, six
months in the Institutional Division of the Texas Department of Criminal Justice. Appellant
timely appealed. 

Discussion

 Appellant presents four issues for review. In his first and second issues, he
contends the trial court erred by overruling his objection to the admission of his oral
statement because he did not receive the warnings of Miranda and art. 38.22. In his third
and fourth issues, appellant claims the court committed egregious error by submitting a
charge instructing the jury of improper conduct issues. 

Issues One and Two: Admissibility of the Oral Statement


 We review the trial court's admission of evidence under an abuse of discretion
standard. Weatherred v. State, 15 S.W.3d 540, 542 (Tex.Crim.App. 2000). We must
uphold the trial court's ruling if the admission of the evidence was within the zone of
reasonable disagreement. Id. (citing Montgomery v. State, 810 S.W.2d 372, 390
(Tex.Crim.App. 1990, op. on reh'g)).

 The prosecution may not use statements, whether exculpatory or inculpatory,
stemming from custodial interrogation of the defendant unless it demonstrates the use of
procedural safeguards effective to secure the privilege against self-incrimination. Miranda
v. Arizona, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L. Ed. 2d 694 (1966). 

 The Miranda warnings are codified in art. 38.22 § 2(a). Jones v. State, 944 S.W.2d
642, 650 n.11 (Tex.Crim.App. 1996). Article 38.22 sec. 3(a) provides that no oral
statement made as a result of custodial interrogation shall be admissible against the
accused in a criminal proceeding unless, among other things, prior to giving the statement,
the accused received the statutory warnings of art. 38.22 sec. 2(a). Miller v. State, 196
S.W.3d 256, 264 (Tex.App.-Fort Worth 2006, pet. ref'd). 

 The requirement of Miranda that police advise a person of rights prior to questioning
applies if the person is "in custody or otherwise deprived of his freedom of action in any
significant way." Miranda, 384 U.S. at 445; Stansbury v. California, 511 U.S. 318, 322, 114
S.Ct. 1526, 128 L.Ed.2d 293 (1994). The determination whether a person is in custody
within the meaning of Miranda must be made on a case by case basis considering all the
objective circumstances. Stansbury, 511 U.S. at 323; Dowthitt v. State, 931 S.W.2d 244,
254-55 (Tex.Crim.App. 1996). A person is in custody only if, under all the circumstances,
a reasonable, innocent person would believe that his freedom of movement was restrained
to the degree associated with an arrest. See Dowthitt, 931 S.W.2d at 255.

 The State argues the evidence shows that appellant was not in custody when he
gave his oral statement to officer Timms. We agree, and overrule appellant's first two
issues.

 Courts have held that, ordinarily, when a person voluntarily accompanies a law
enforcement officer to a certain location, even though the person knows or should know
that the officer suspects he or she may have committed or may be implicated in the
commission of a crime, the person is not restrained or "in custody." Miller, 196 S.W.3d at
264 (citing Livingston v. State, 739 S.W.2d 311, 327 (Tex.Crim.App. 1987), cert. denied,
487 U.S. 1210, 101 L. Ed. 2d 895, 108 S. Ct. 2858 (1988)). When the circumstances
reveal a person acts only on the invitation, request, or even urging of law enforcement, and
there are no threats, either express or implied, that he or she will be taken forcibly, the
accompaniment is voluntary, and the person is not in custody. Shiflet v. State, 732 S.W.2d
622, 628 (Tex.Crim.App. 1985); see Anderson v. State, 932 S.W.2d 502, 505
(Tex.Crim.App. 1996), cert. denied, 521 U.S. 1122, 138 L. Ed. 2d 1019, 117 S. Ct. 2517
(1997) (Fourth Amendment case). However, an interrogation that begins as noncustodial
may escalate into a custodial interrogation based on the conduct of law enforcement during
the encounter. Ussery v. State, 651 S.W.2d 767, 770 (Tex.Crim.App. 1983).

 The Court of Criminal Appeals has observed at least four general circumstances
that may constitute custody: (1) when the suspect is physically deprived of his freedom of
action in any significant way, (2) when a law enforcement officer tells the suspect he
cannot leave, (3) when law enforcement officers create a situation that would lead a
reasonable person to believe his freedom of movement is significantly restricted, and (4)
when there is probable cause to arrest and law enforcement officers do not tell the suspect
he is free to leave. Dowthitt, 931 S.W.2d at 255. 

 In the first through third situations, the restriction on freedom of movement must
amount to the degree associated with an arrest as opposed to an investigative detention. 
Id. Here, during the interview appellant was not subject to restriction of movement to the
degree associated with an arrest. Therefore, our discussion turns to the fourth situation
addressed in Dowthitt, probable cause to arrest.

 The officer's knowledge of probable cause must be manifested to the suspect, and
such manifestation could occur if information sustaining the probable cause is related by
the officer to the suspect or by the suspect to the officer. Id.; see Ruth v. State, 645
S.W.2d 432, 436 (Tex.Crim.App. 1979) (holding that a suspect's "statement that he had
shot the victim immediately focused the investigation on him and furnished probable cause
to believe that he had committed an offense; after that time, the continued interrogation
must be considered a custodial one").

 However, the manifestation of probable cause does not automatically establish
custody. Rather, custody attaches if the manifestation of probable cause, combined with
other circumstances, would lead a reasonable person to believe that he is under restraint
to the degree associated with an arrest. Dowthitt, 931 S.W.2d at 255. 

 Situations where the manifestation of probable cause triggers custody are unusual. 
State v. Stevenson, 958 S.W.2d 824, 829 n.7 (Tex.Crim.App. 1997). Illustrative is
Dowthitt, where probable cause gave rise to custody when the defendant made an
incriminating statement after an hours-long interrogation session during which he
experienced a substantial period without food, his complaints of exhaustion and requests
to see his wife were ignored, and he was accompanied on restroom breaks by authorities. 
931 S.W.2d at 257 and 252-254. 

 We do not find the unusual circumstances of Dowthitt present here. And even
though during questioning a person may utter responses implicating himself or herself in
an offense, this alone does not trigger custody. Thus, in Scott v. State, 165 S.W.3d 27
(Tex.App.-Austin 2005), rev'd on other grounds, 227 S.W.3d 670, No. PD-0862-05, 2007
Tex. Crim. App. LEXIS 697, at *54 (Tex.Crim.App. June 6, 2007) the accused gave a
written statement after participating in approximately twenty hours of police questioning
spread over five days without receiving a Miranda warning. 165 S.W.3d at 42. Relying on
Dowthitt, the accused argued the trial court erred in denying his motion to suppress his
statement because probable cause arose the first day of questioning when he admitted
involvement in the notorious Austin "yogurt shop murders." Id. Disagreeing, the appellate
court noted no controlling authority for the proposition that lengthy questioning alone
creates custody. Id. It then distinguished the interrogation facts of Dowthitt, discussed
above, and those before it. In Scott, the accused received breaks, although cigarette
breaks outside the building were escorted so that he could return to the secure questioning
area, ample food and drink were provided, officers took him home at the end of each day's
questioning, and although his home was clandestinely under surveillance, the court found 
this did not legally restrict his movement. 165 S.W.3d at 42 and 42 n.6, n.7. Upon these
facts the court affirmed the trial court's findings that a reasonable person in the position of
the accused would not believe his freedom of movement restrained to the degree
associated with a formal arrest. Id. at 43.

 In the matter at hand, as noted, appellant voluntarily accompanied Officer Timms
to the school cafeteria for questioning early in the afternoon. Background sounds and
voices on the interview recording indicate they were not alone. The interview lasted
something less than eighteen minutes and for much of this time the discussion focused on
appellant as a witness. Approximately twelve minutes into the interview, when appellant
admitted he was the driver of the accident vehicle, Officer Timms responded by requesting
appellant voluntarily ("if you don't mind") accompany him to the location of the accident
vehicle and then to the station for a written statement ("I asked him if he would go to Slaton
and give a written statement"). Officer Timms told appellant that after the statement he
would "cut [appellant] loose," take him home, and once the paperwork was prepared, let
the district attorney's office "see what they want to do with it." While a custody
determination is an objective assessment, Stansbury 511 U.S. at 323, it is nevertheless
noteworthy that, before ruling on the admissibility of appellant's oral statement, the trial
judge heard Officer Timms' testimony that appellant was at all times free to leave. The
judge also had before him appellant's written statement, recounting both Officer Timms'
request that appellant show him the location of the accident vehicle and appellant's
voluntary assent. At the conclusion of the interview, in a telephone conversation with his
employer, appellant reported he had to leave work for the day but would call the employer
the following morning. 

 Based upon the totality of circumstances, we do not find that appellant was in
custody for Miranda and art. 38.22 purposes at any time during his recorded interview with
Officer Timms. Thus, the absence of statutory and constitutional warnings did not render
appellant's oral statement inadmissible under either the Fifth Amendment to the United
States Constitution and Miranda, or under art. 38.22. Accordingly, the trial court did not
abuse its discretion in admitting appellant's oral statement. 

Issues Three and Four: Charge Error


 By his third and fourth issues appellant argues the definitions of the culpable mental
states of "intentionally" and "knowingly" in the court's charge and the use of those terms
in the application paragraph of the charge were erroneous, and harmed him. We disagree.

 An appellate court's review of alleged error in a jury charge involves a two-step
process. Abdnor v. State, 871 S.W.2d 726, 731 (Tex.Crim.App. 1994). First, we must
determine whether error occurred. Second, if we find error, then we determine whether
sufficient harm resulted from the error to require reversal. Id. at 731-32.

 The relevant definitions and the application paragraph contained in the court's
charge to the jury read as follows:

 A person acts intentionally, or with intent, with respect to the nature of his
conduct or to a result of his conduct when it is his conscious objective or
desire to engage in the conduct.

 A person acts knowingly, or with knowledge, with respect to the nature of his
conduct or to circumstances surrounding his conduct when he is aware of
the nature of his conduct or that the circumstances exist.

 * * * 


 Now, bearing in mind the foregoing instructions, if you find from the evidence
beyond a reasonable doubt that on or about April 10, 2002, in Lubbock
County, Texas, as alleged in the indictment, the defendant, JESSE GARCIA,
did intentionally or knowingly drive a vehicle which was then and there
involved in an accident resulting in injury to Earl Powell, and did then and
there intentionally or knowingly leave the scene of such accident knowing
that said accident had occurred, without first giving his name and address to
any person, and without rendering reasonable assistance to Earl Powell,
then you will find the defendant guilty, and so say by your verdict.


(capitalization in original)

 Section 550.021 of the Texas Transportation Code provides, in relevant part: 


 (a) The operator of a vehicle involved in an accident resulting in injury to or
death of a person shall:


 (1) immediately stop the vehicle at the scene of the accident or
as close to the scene as possible;


 (2) immediately return to the scene of the accident if the
vehicle is not stopped at the scene of the accident; and


 (3) remain at the scene of the accident until the operator
complies with the requirements of Section 550.023.

 

* * *


 (c) A person commits an offense if the person does not stop or does not comply
with the requirements of this section. 



 Tex. Trans. Code Ann. § 550.021 (Vernon 1999).


 It is apparent that § 550.021 does not specify the requisite culpable mental state
for actionable conduct nor does it "plainly dispense" with proof of mental culpability. Under
such circumstances, the Penal Code supplies the culpable mental state which the State
must prove. Tex. Penal Code Ann. § 6.02 (b), (c). 

 Appellant cites St. Clair v. State, 26 S.W.3d 89, 98 (Tex. App.-Waco 2000, pet.
ref'd) and Morales v. State, 673 S.W.2d 697, 699 (Tex.App.-Corpus Christi 1984, no pet.)
for the proposition that "[f]ailure to stop and render aid is a circumstances-surrounding-conduct offense." From that premise, he argues that the charge's definitions of the terms
intentionally and knowingly were overly broad and erroneous because they defined those
terms with respect to the nature of conduct and the result of conduct in addition to the
knowledge of circumstances surrounding the conduct. See Cook v. State, 885 S.W.2d
485, 491 (Tex.Crim.App. 1994). The discussions of culpable mental state in St. Clair, 26
S.W.3d at 98, and Morales, 673 S.W.2d at 699, begin with Goss v. State, 582 S.W.2d 782 
(Tex.Crim.App. 1979). In Goss, the court considered a challenge to an indictment that
alleged the defendant intentionally and knowingly operated a vehicle that was involved in
a collision, but did not allege the defendant knew the accident had occurred. Id. at 783,
785. The court held knowledge an accident had occurred is an element of the offense of
failure to stop and render aid, contrasting the treatment of the knowledge element under
the revised penal code with prior law that treated the defendant's lack of knowledge as a
defensive matter. Id. at 785. The court concluded that the culpable mental state required
for the offense "is that the accused had knowledge of the circumstances surrounding his
conduct (V.T.C.A., Penal Code Sec. 6.03(b)), i.e., had knowledge that an accident had
occurred." Id.; accord, Baker v. State, 974 S.W.2d 750 (Tex. App.-San Antonio 1998, pet.
ref'd) (Goss analysis applies to offense as codified in §§ 550.021 and 550.023, Texas
Transportation Code). While Goss and cases following it clearly require that the State
prove the defendant had knowledge of the circumstances, that is, knowledge an accident
had occurred, we do not read such cases to hold that the only culpable mental state
applicable to the offense proscribed by § 550.021 is the knowledge of circumstances
surrounding the conduct. 

 Many cases, including Morales, 673 S.W.2d at 698, list the elements of the offense
to include the driver's intentional and knowing failure to stop and take the statutorily
required actions. See, e.g., Steen v. State, 640 S.W.2d 912, 915 (Tex.Crim.App. 1982);
Allen v. State, 971 S.W.2d 715, 717 (Tex.App.-Houston [14th Dist.] 1998 no pet.); Sheridan
v. State, 950 S.W.2d 755, 759 (Tex.App.-Fort Worth 1997, no pet.). Such elements focus
not on knowledge of circumstances but on the nature of the defendant's conduct. Cf.
Sheridan, 950 S.W.2d at 759 (noting that "gravamen of the offense relates to the actor's
failure to stop and render reasonable assistance"). Considering Goss and the cases
following it in light of Steen and the other cases containing that listing of the elements, we
conclude that § 550.021 encompasses elements that relate to both the circumstances
surrounding conduct and the nature of conduct. 

 Appellant's indictment included the allegations that he intentionally and knowingly
drove the vehicle involved in the accident, and that he intentionally and knowingly left the
scene of the accident, knowing that the accident had occurred. We find the trial court did
not err by defining, in its charge, intentional and knowing conduct with reference to the
nature of appellant's conduct.

 We agree with appellant, however, that the charge's definition of intentional conduct
should not have contained the reference to a result of his conduct. See Garza v. State,
794 S.W.2d 497, 500-01 (Tex.App.-Corpus Christi 1992, pet. ref'd) (charge should contain
only that portion of the statutory definition which corresponds to the culpable mental state
proscribed by the offense). We next consider whether the error resulted in actual, as
opposed to theoretical, harm to appellant. Patrick v. State, 906 S.W.2d 481, 492
(Tex.Crim.App. 1995). 

 Appellant did not raise the objections to the charge in the trial court that he now
urges. When an appellant fails to preserve charge error through a timely and proper
objection, then the appellate court must decide whether the error was so egregious that the
appellant did not receive a fair and impartial trial. Almanza, 686 S.W.2d 157, 171
(Tex.Crim.App. 1985); Hutch v. State, 922 S.W.2d 166, 171 (Tex.Crim.App. 1996). "Jury-charge error is egregiously harmful if it affects the very basis of the case, deprives the
defendant of a valuable right, or vitally affects a defensive theory." Stuhler v. State, 218
S.W.3d 706, 719 (Tex.Crim.App. 2007). Our review for egregious harm requires
consideration of the entire jury charge, the evidence including the contested issues and
weight of the probative evidence, the arguments of counsel, and any other relevant
information revealed by the record of the trial as a whole. Id. Review of those factors does
not reveal that appellant suffered egregious harm from the inclusion of the reference to
result of conduct in the charge's definition of the term intentionally. 

 We overrule appellant's third and fourth issues.

Conclusion

 Having overruled appellant's four issues, we affirm the judgment of the trial court.


 James T. Campbell

 Justice






Publish. 
1. Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).
2. Tex. Code Crim. Proc. Ann. art. 38.22 (Vernon 2005).



style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Title Char";
 mso-style-next:Normal;
 mso-style-type:export-only;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:15.0pt;
 margin-left:0in;
 mso-add-space:auto;
 mso-pagination:widow-orphan;
 border:none;
 mso-border-bottom-alt:solid #4F81BD 1.0pt;
 padding:0in;
 mso-padding-alt:0in 0in 4.0pt 0in;
 font-size:26.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#17365D;
 letter-spacing:.25pt;
 mso-font-kerning:14.0pt;
 mso-bidi-language:EN-US;}
p.MsoSubtitle, li.MsoSubtitle, div.MsoSubtitle
 {mso-style-priority:11;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Subtitle Char";
 mso-style-next:Normal;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:12.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 letter-spacing:.75pt;
 mso-bidi-language:EN-US;
 font-style:italic;}
a:link, span.MsoHyperlink
 {mso-style-priority:99;
 color:blue;
 text-decoration:underline;
 text-underline:single;}
a:visited, span.MsoHyperlinkFollowed
 {mso-style-noshow:yes;
 mso-style-priority:99;
 color:purple;
 mso-themecolor:followedhyperlink;
 text-decoration:underline;
 text-underline:single;}
p.MsoAcetate, li.MsoAcetate, div.MsoAcetate
 {mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-link:"Balloon Text Char";
 margin:0in;
 margin-bottom:.0001pt;
 mso-pagination:widow-orphan;
 font-size:8.0pt;
 font-family:"Tahoma","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoNoSpacing, li.MsoNoSpacing, div.MsoNoSpacing
 {mso-style-priority:1;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-parent:"";
 margin:0in;
 margin-bottom:.0001pt;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoListParagraph, li.MsoListParagraph, div.MsoListParagraph
 {mso-style-priority:34;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:.5in;
 mso-add-space:auto;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoListParagraphCxSpFirst, li.MsoListParagraphCxSpFirst, div.MsoListParagraphCxSpFirst
 {mso-style-priority:34;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-type:export-only;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:.5in;
 margin-bottom:.0001pt;
 mso-add-space:auto;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoListParagraphCxSpMiddle, li.MsoListParagraphCxSpMiddle, div.MsoListParagraphCxSpMiddle
 {mso-style-priority:34;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-type:export-only;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:.5in;
 margin-bottom:.0001pt;
 mso-add-space:auto;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoListParagraphCxSpLast, li.MsoListParagraphCxSpLast, div.MsoListParagraphCxSpLast
 {mso-style-priority:34;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-type:export-only;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:.5in;
 mso-add-space:auto;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoQuote, li.MsoQuote, div.MsoQuote
 {mso-style-priority:29;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Quote Char";
 mso-style-next:Normal;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 color:black;
 mso-bidi-language:EN-US;
 font-style:italic;}
p.MsoIntenseQuote, li.MsoIntenseQuote, div.MsoIntenseQuote
 {mso-style-priority:30;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Intense Quote Char";
 mso-style-next:Normal;
 margin-top:10.0pt;
 margin-right:.65in;
 margin-bottom:14.0pt;
 margin-left:.65in;
 line-height:115%;
 mso-pagination:widow-orphan;
 border:none;
 mso-border-bottom-alt:solid #4F81BD .5pt;
 padding:0in;
 mso-padding-alt:0in 0in 4.0pt 0in;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 color:#4F81BD;
 mso-bidi-language:EN-US;
 font-weight:bold;
 font-style:italic;}
span.MsoSubtleEmphasis
 {mso-style-priority:19;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 color:gray;
 font-style:italic;}
span.MsoIntenseEmphasis
 {mso-style-priority:21;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 color:#4F81BD;
 font-weight:bold;
 font-style:italic;}
span.MsoSubtleReference
 {mso-style-priority:31;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 font-variant:small-caps;
 color:#C0504D;
 text-decoration:underline;
 text-underline:single;}
span.MsoIntenseReference
 {mso-style-priority:32;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 font-variant:small-caps;
 color:#C0504D;
 letter-spacing:.25pt;
 font-weight:bold;
 text-decoration:underline;
 text-underline:single;}
span.MsoBookTitle
 {mso-style-priority:33;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 font-variant:small-caps;
 letter-spacing:.25pt;
 font-weight:bold;}
p.MsoTocHeading, li.MsoTocHeading, div.MsoTocHeading
 {mso-style-noshow:yes;
 mso-style-priority:39;
 mso-style-qformat:yes;
 mso-style-parent:"Heading 1";
 mso-style-next:Normal;
 margin-top:24.0pt;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:0in;
 margin-bottom:.0001pt;
 line-height:115%;
 mso-pagination:widow-orphan lines-together;
 page-break-after:avoid;
 font-size:14.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#365F91;
 mso-bidi-language:EN-US;
 font-weight:bold;}
span.Heading1Char
 {mso-style-name:"Heading 1 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 1";
 mso-ansi-font-size:14.0pt;
 mso-bidi-font-size:14.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#365F91;
 font-weight:bold;}
span.Heading2Char
 {mso-style-name:"Heading 2 Char";
 mso-style-noshow:yes;
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 2";
 mso-ansi-font-size:13.0pt;
 mso-bidi-font-size:13.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 font-weight:bold;}
span.Heading3Char
 {mso-style-name:"Heading 3 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 3";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 font-weight:bold;}
span.Heading4Char
 {mso-style-name:"Heading 4 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 4";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 font-weight:bold;
 font-style:italic;}
span.Heading5Char
 {mso-style-name:"Heading 5 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 5";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#243F60;}
span.Heading6Char
 {mso-style-name:"Heading 6 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 6";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#243F60;
 font-style:italic;}
span.Heading7Char
 {mso-style-name:"Heading 7 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 7";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#404040;
 font-style:italic;}
span.Heading8Char
 {mso-style-name:"Heading 8 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 8";
 mso-ansi-font-size:10.0pt;
 mso-bidi-font-size:10.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;}
span.Heading9Char
 {mso-style-name:"Heading 9 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 9";
 mso-ansi-font-size:10.0pt;
 mso-bidi-font-size:10.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#404040;
 font-style:italic;}
span.TitleChar
 {mso-style-name:"Title Char";
 mso-style-priority:10;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Title;
 mso-ansi-font-size:26.0pt;
 mso-bidi-font-size:26.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#17365D;
 letter-spacing:.25pt;
 mso-font-kerning:14.0pt;}
span.SubtitleChar
 {mso-style-name:"Subtitle Char";
 mso-style-priority:11;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Subtitle;
 mso-ansi-font-size:12.0pt;
 mso-bidi-font-size:12.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 letter-spacing:.75pt;
 font-style:italic;}
span.QuoteChar
 {mso-style-name:"Quote Char";
 mso-style-priority:29;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Quote;
 color:black;
 font-style:italic;}
span.IntenseQuoteChar
 {mso-style-name:"Intense Quote Char";
 mso-style-priority:30;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Intense Quote";
 color:#4F81BD;
 font-weight:bold;
 font-style:italic;}
p.NewDocument, li.NewDocument, div.NewDocument
 {mso-style-name:"New Document";
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-next:Normal;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:12.0pt;
 mso-bidi-font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
span.BalloonTextChar
 {mso-style-name:"Balloon Text Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Balloon Text";
 mso-ansi-font-size:8.0pt;
 mso-bidi-font-size:8.0pt;
 font-family:"Tahoma","sans-serif";
 mso-ascii-font-family:Tahoma;
 mso-hansi-font-family:Tahoma;
 mso-bidi-font-family:Tahoma;
 mso-bidi-language:EN-US;}
span.HeaderChar
 {mso-style-name:"Header Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Header;
 mso-ansi-font-size:11.0pt;
 mso-bidi-font-size:11.0pt;
 mso-bidi-language:EN-US;}
span.FooterChar
 {mso-style-name:"Footer Char";
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Footer;
 mso-ansi-font-size:11.0pt;
 mso-bidi-font-size:11.0pt;
 mso-bidi-language:EN-US;}
span.EndnoteTextChar
 {mso-style-name:"Endnote Text Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Endnote Text";
 mso-bidi-language:EN-US;}
span.FootnoteTextChar
 {mso-style-name:"Footnote Text Char";
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Footnote Text";
 mso-bidi-language:EN-US;}
span.pmterms11
 {mso-style-name:pmterms11;
 mso-style-unhide:no;
 color:black;
 font-weight:bold;
 font-style:normal;}
span.GramE
 {mso-style-name:"";
 mso-gram-e:yes;}
.MsoChpDefault
 {mso-style-type:export-only;
 mso-default-props:yes;
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:Arial;
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:Arial;}
 /* Page Definitions */
 @page
 {mso-footnote-separator:url("07-10-0295-CR%20%20Opinion_files/header.htm") fs;
 mso-footnote-continuation-separator:url("07-10-0295-CR%20%20Opinion_files/header.htm") fcs;
 mso-endnote-separator:url("07-10-0295-CR%20%20Opinion_files/header.htm") es;
 mso-endnote-continuation-separator:url("07-10-0295-CR%20%20Opinion_files/header.htm") ecs;}
@page WordSection1
 {size:8.5in 11.0in;
 margin:1.0in 1.0in 1.0in 1.0in;
 mso-header-margin:.5in;
 mso-footer-margin:.5in;
 mso-title-page:yes;
 mso-footer:url("07-10-0295-CR%20%20Opinion_files/header.htm") f1;
 mso-paper-source:0;}
div.WordSection1
 {page:WordSection1;}
-->








NO. 07-10-0295-CR

 

IN THE COURT OF APPEALS

 

FOR THE
SEVENTH DISTRICT OF TEXAS

 

AT
AMARILLO

 

PANEL C

 

 DECEMBER 16, 2010



 

 



 

 

WILLIE EARL LEFLORE, APPELLANTS

 

v.

 

THE STATE OF TEXAS, APPELLEE 



 

 



 

 FROM THE 432ND DISTRICT
COURT OF TARRANT COUNTY;

 

NO. 1065684D; HONORABLE RUBEN GONZALEZ, JUDGE



 

 



 

Before QUINN, C.J., and HANCOCK and
PIRTLE, JJ.

 

 

MEMORANDUM OPINION

            Appellant,
Willie Earl Leflore, pled guilty in open court to possession of a controlled
substance (cocaine) in an amount of four grams or more but less than 200 grams with
intent to deliver[1]
and was sentenced to eighteen years confinement.  In a single point of error, Appellant asserts
his sentence of eighteen years confinement constitutes cruel and unusual punishment
under the Eighth Amendment of the United
States Constitution.[2]

Background

            On July 25,
2007, a Tarrant County Grand Jury returned an indictment against Appellant for
intentionally and knowingly possessing four grams or more, but less than 400 grams,
of cocaine with intent to deliver, and the lesser included offense of possession.[3]  And, on June 18, 2008, the State filed a
habitual offender and enhancement notice alleging Appellant had been convicted
in Mississippi for two felonies, selling cocaine in 1991 and burglary in 1980.

            On December 7, 2009, Appellant pled
guilty to the indictment after it was amended by the State to delete the lesser
included offense.  The State also waived
its habitual offender notice.  Prior to
taking Appellant's plea, the trial court admonished Appellant that the range of
punishment was by imprisonment for life or a term of not more than ninety-nine
years or less than five years.  Appellant
then entered his plea of guilty.  

            On April 15, 2010, a sentencing
hearing was held.  The evidence at the
hearing indicated Appellant was convicted of felony burglary in February 1980
and received four years probation.  Less
than three weeks later, he violated his parole by carrying a concealed
weapon.  His parole was revoked and he was
sentenced to three years confinement.  In
March 1981, he was paroled and, in May 1982, he was discharged from
parole.  In September 1991, he was
convicted of selling cocaine and was sentenced to twenty years confinement.  In February 2001, he was paroled.  After his arrest in May 2007, he was released
on bond subject to supervision by the Tarrant County Community Supervisions and
Corrections Department.  While on bond
he    violated the conditions of his bond by testing
positive for drug use.  

            Appellant's counsel sought probation
citing that the amount of the cocaine he possessed, 4.77 grams, was
significantly closer to four grams than two hundred grams.  He also pointed out that Appellant had been
out of prison for eight years with a consistent work history and stable family
life.  The State, on the other hand,
requested a substantial amount of penitentiary time based on Appellant's prior
criminal history.  The State also pointed
out that, at the time of his arrest, there were digital scales in his car covered
with residue indicative of selling drugs, not just possession.  Although Appellant had been out of prison
since 2001, the State asserted there was evidence that, since 2006, he had been
purchasing and selling cocaine on a continual basis.  

            After considering the evidence and
arguments of counsel, the trial court found Appellant guilty and sentenced him
to eighteen years confinement. 
Thereafter, Appellant's motion for a new trial was denied and this appeal
followed.




Discussion

            On appeal, Appellant
makes many of the same arguments made at the sentencing proceeding and asserts
that his sentence, even though within the range of punishment provided by law, violates
the strictures of the Eighth Amendment of
the United States Constitution because the sentence is cruel and unusual.

            The State
contends that Appellant did not preserve his complaint for appellate
review.  We agree.  Appellant did not object to his sentence at
the time of sentencing.  Neither did
Appellant allege an Eighth Amendment
violation in his motion for a new trial. 
As a prerequisite to presenting a complaint for appellate review,
Appellant must present to the trial court a timely request, objection, or
motion stating the specific grounds for the desired ruling.  Tex. R. App. P. 33.1(a)(1).  Constitutional rights, including the right to
be free from cruel and unusual punishment, may be waived by a failure to
object.  See Castaneda v. State, 135 S.W.3d 719, 723 (Tex.Crim.App. 2003)
(citing Rhoades v. State, 934 S.W.2d
113, 120 (Tex.Crim.App. 1996)).  Under
the facts of this case, we find that Appellant's complaint that his sentence is
cruel and unusual under the Eighth
Amendment was not preserved for review. 
See Castaneda, 135 S.W.3d at
723; Noland v. State, 264 S.W.3d 144,
151-52 (Tex.App.--Houston [1st Dist.] 2007, pet. ref'd).

            That said, even if Appellant had
preserved his complaint, he would not succeed on his claim.  The Eighth
Amendment prohibits punishment that is "grossly disproportionate"
to the offense for which a defendant has been convicted.  See
Winchester v. State, 246 S.W.3d 386, 389 (Tex.App.--Amarillo 2008, pet.
ref'd).  In determining whether a
sentence is "grossly disproportionate," the reviewing court must
first compare the gravity of the offense with the severity of the
sentence.  Id. at 390. 

            Appellant has two prior felony
convictions, including one for selling drugs. 
When he was arrested, he was in possession of nearly five grams of
cocaine and a set of digital scales with residue on them.  Thus, there was evidence Appellant was again selling
drugs.  Despite having spent nearly ten
years in prison for a prior drug offense, he was arrested for a similar drug offense
only six years after his release.  And,
while on bond pending disposition of this case, he tested positive for drug
use.  Appellant's sentence is within the
statutory range of punishment for the offense committed and, given the
circumstances of his arrest, his prior criminal history, and the violation of
the conditions of his bond, we cannot say his sentence was grossly
disproportionate to the gravity of the offense upon which his sentence is
based.  See Winchester, 246 S.W.3d at 391.  Appellant's sole point of error is overruled.

Conclusion

            The trial
courts judgment is affirmed.   

 

 

                                                                                                Patrick A. Pirtle

                                                                                                      Justice  

 

Do not publish.











[1]See Tex. Health & Safety Code Ann. §
481.112(d) (West 2010).  An offense under
this subsection is a felony of the first degree, punishable by imprisonment for
life or for any term of not more than 99 years or less than 5 years.  Id. at § 12.32 (West Supp. 2010).   





[2]The
Eighth Amendment of the Unites States
Constitution prohibits excessive bail or fines as well as cruel and unusual
punishment; See U.S. Const. amend. VIII,
and is applicable to the States through the Fourteenth
Amendment.  Furman v.
Georgia, 408 U.S. 238, 239, 92 S.Ct. 2726, 33
L.Ed.2d 346 (1972).





[3]See Tex. Health & Safety Code Ann.
§§ 481.112(d), 481.115 (West 2010), respectively.  Although the indictment originally alleged
"four grams or more but less than four hundred grams," the
appropriate weight category for subsection (d) is four grams or more but less
than two hundred grams.  Id. at § 481.112(d).  The indictment was amended to correctly
reflect this weight category on December 4, 2009.